Paul Milo VAN DE BOGART, Jr.,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19446.

United States Court of Appeals
Fifth Circuit.

June 28, 1962.

Paul Milo Van de Bogart, Jr., for appellant.

Macon L. Weaver, U. S. Atty., R. Macey Taylor, Asst. U. S. Atty., Aubrey O. Lammons, Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before TUTTLE, Chief Judge, and RIVES and BROWN, Circuit Judges.

584

JOHN R. BROWN, Circuit Judge.

This case presents again the difficult problem of determining the question of mental competency to stand trial for a criminal charge. Difficult it is, at least in the sense that since this reflects our basic notion that those incapable of understanding the nature of the proceedings taking place ought not to be tried, every case must be measured in like terms of fundamental satisfaction of that ideal. That invariably complicates the matter. For it may seldom any longer be true that the answer may be found in the simple terms of compliance or non-compliance with a specific statute. That certainly is true when the attack on mental competency to stand trial is asserted by post-conviction remedies of a collateral kind such as habeas corpus, or, for federal prisoners, 28 U.S.C.A. § 2255. All this adds up to make it even more difficult from the standpoint of the busy trial Judge faced with an overpowering docket. Thus he must make so many judgments in borderline situations whether, in any given case, a substantial enough showing is reflected in papers—often unartfully drawn by earnest but untrained laymen—to require a judicial hearing to determine the real medico-legal fact. If a District Judge may not satisfy the duty to provide a judicial ascertainment of the fact in a proper case—and it is certain he may not—merely because some statutory mechanisms relating to mentally incompetent defendants is utilized or ignored, then by the same token the Judge's actions are not to be declared erroneous simply because he uses the wrong statute, or a right statute in a wrong way. What he does, just as what he does not do, must be scrutinized in terms of the real substance of things.

So it is here. By a § 2255 proceeding, Petitioner sought to set aside a conviction based on his plea of guilty on the ground that he was not mentally competent to stand trial and, specifically, not competent therefore to enter the plea of guilty. The specific criticism is in three parts. The first is that the Judge misused 18 U.S.C.A. § 4208 [1] as a means by which to ascertain the true facts as to Petitioner's mental condition. The second is that, in any event, on receipt of the report from the prison authorities, including the medical evaluation resulting from the interim sentence under § 4208, the Judge should then have vacated the plea of guilty, or at least judicially ascertained the true mental condition of the accused. The third is that since these same facts are now revealed in the § 2255 proceedings, the Judge either had to do now what he earlier should have done—revoke the plea of guilty thus

1. This was added in 1958, Public Law 85–752, § 3, August, 25, 1958, 72 Stat. 845. See 1958 U.S.Code Cong. and Adm.News, p. 3891. § 3(a) permits the Judge "entering a judgment of conviction" to designate a minimum term at the expiration of which the prisoner shall become eligible for parole or to fix the maximum sentence of imprisonment to be served. Under § (c) the Director of the Bureau of Prisons is required to make and furnish to the Board of Parole a comprehensive study of the prisoner for the purpose of "determining the suitability of the prisoner for parole." The District Court here, however, apparently relied on subparagraph (b) which provides:

"(b) If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as described in subsection (c) hereof. The results of such study, together with any recommendations which the Director of the Bureau of Prisons believes would be helpful in determining the disposition of the case, shall be furnished to the court within three months unless the court grants time, not to exceed an additional three months, for further study. After receiving such reports and recommendations, the court may in its discretion: (1) Place the prisoner on probation as authorized by section 3651 of this title, or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence shall run from date of original commitment under this section."

setting aside the conviction—or, at least, should have had a judicial hearing to receive and evaluate the medical and other evidence bearing upon mental competency.

The District Court, denying the § 2255 petition without a hearing, rejected all of these contentions. Whether this was correct in the circumstances of this unique case depends on whether this satisfied the principles expounded by us in Gregori v. United States, 5 Cir., 1957, 243 F.2d 48, and since that time applied consistently in many situations. Brown v. United States, 5 Cir., 1959, 267 F.2d 42; Alexander v. United States, 5 Cir., 1961, 290 F.2d 252; Corbett v. United States, 5 Cir., 1961, 296 F.2d 131; Callahan v. United States, 5 Cir., 1961, 297 F.2d 79; Hughes v. United States, 5 Cir., 1962, 303 F.2d 776. Cf. Lee v. Wiman, 5 Cir., 1960, 280 F.2d 257 at 266.

The Petitioner was arrested on June 2, 1960, in the Northern District of Alabama under a warrant issued on charges arising in the Southern District of Florida for interstate transportation of counterfeited securities. 18 U.S.C.A. § 2314. On June 17, Petitioner initiated a request for a transfer to permit a plea of guilty under F.R.Crim.P. 20, 18 U.S.C.A. The Court thereupon appointed counsel. Thereafter counsel advised the Court he was ready to proceed and stated: "The plea is guilty * * * and [Petitioner] would like to ask the Court to assist him in getting a psychiatric examination." The Court after accepting written waiver of indictment replied to this request for psychiatric examination as follows: "Well there is a section of the Code which was adopted in 1958 which has become effective for a situation of that kind and I will certainly consider it."

The Rule 20 transfer was completed on July 29, 1960, at which time the judg-

ment entered committed Petitioner to the custody of the Attorney General under the provisions of § 4208(b). That Section, see note 1, supra, permits the Court to commit the defendant to the custody of the Attorney General "if the court desires more detailed information as a basis for determining the sentence to be imposed." And such "commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law" for the offense charged. The purpose of the imprisonment is to enable a comprehensive study to be made of the prisoner as prescribed in subparagraph (c). But the purpose of such study is specifically confined to "determining the suitability of the prisoner for parole." In concluding the imposition of that sentence, the Judge then made this statement. "Now I am of the opinion that this defendant needs psychiatric help and he will get it under that sentence."

It should be pointed out here that at this stage, in speaking in terms of the need for psychiatric examination, neither the court-appointed counsel nor the Judge had in mind mental incompetence to stand trial. Each was thinking in terms of treatment. But this does not end the matter since the Judge's action must be tested in the light of information generated by the sentence imposed.

Pursuant to this sentence, Petitioner was sent to the United States Federal Penitentiary Terre Haute, Indiana, on August 3. On October 26, 1960, the Director of the Bureau of Prisons submitted the formal report required by § 4208(c). This was in the form of a Classification Study. The Director's transmittal letter stated that the "study includes a detailed medical and psychiatric report" and that the "psychiatrist has observed some symptoms of possible underlying acute mental illness." [2] Reflecting that the prison au-

---

**2.** This full paragraph read: "The study includes a detailed medical and psychiatric report and you will note that the current psychiatric examination has resulted in a diagnosis of a personality disturbance, anti-social reaction. The psychiatrist has observed some symptoms of possible underlying acute mental illness. These include feelings of unreality, thought disturbance, and feelings of hostility. The

thorities considered the examination in the context of § 4208(c)—the suitability of Petitioner for parole—and not in terms of general mental competence, the report concluded that Petitioner "should not be considered a prospect for probation," and that a sentence of three years under § 4208(a) (2) was recommended as providing "ample time for institutional treatment and, in addition, [to] assure a period of supervision in the community following release."[3]

This Classification Study included as two separate subdivisions the Staff Evaluation and one described as Medical and Psychiatric. The Staff Evaluation report went into considerable detail in the history and the behavior problems of this frequently incorrigible young man who possessed an IQ of 124 and was characterized as one of "superior intelligence." Despite this and a good family background in California and a demonstrated capacity for a successful business career, the report, with regard to his mental-emotional aspect, concluded: "Psychiatrically, he is suspected of suffering from a schizophrenic illness which may ultimately lead to psychotic certification." Then followed the only refer-

ence, direct or indirect, to mental capacity in terms of legal accountability. "We feel," the Staff Evaluation continued, "that he was a responsible person at the time of the offense." Nothing was said there as to the time of arraignment, plea or sentence.

The Medical and Psychiatric Report reflected considerably more detail. Thus, the "Psychological evaluation while incarcerated in a military prison" shows that he "was diagnosed as being a psychopath * * *." Contemporary "psychological testing" at the prison "reveals * * * disturbing thoughts while trying to sleep, suicide wishes when depressed, thoughts of killing someone, * * *." The conclusions were stated in the "Summary" that " * * * we note also, inability at times to differentiate between reality and unreality, thought disturbance, feelings of having to kill someone * * *. This man would appear to the examiner to be suffering with a character disorder. At this time there would appear to be evidence of a more serious mental deteriorating process occurring." This was immediately followed by the tabulated diagnosis:

| DIAGNOSIS: | RECOMMENDATIONS: |
|---|---|
| "Psychiatric: 000-X61 anti-social reaction<br>000-X26Y Schizophrenic reaction, chronic undifferiated type, suspected | I shall keep this man under observation and report later whether I am able to confirm that he is suffering with a schizophrenic illness. He is presently on tranquilizing medication for relief of tensions." |

———◆———

What the Judge did on consideration of that Report demonstrates positively that he did not think that it revealed

any such mental incompetence as to (1) vitiate Petitioner's earlier plea of guilty or (2) require a further hearing to deter-

illness, if present, has not reached psychiatric proportions and the psychiatrist will continue to keep [Petitioner] under observation."

3. "It appears that in the light of the man's [Petitioner's] history and the questions which have arisen concerning his

mental health he should not be considered a prospect for probation. We believe that he should remain in an institution long enough to permit psychiatric follow-up and counseling. If he develops a frank psychosis, we will arrange to hospitalize him at the Medical Center for Federal Prisoners, Springfield, Missouri. * *."

mine the fact. For the Judge, accepting the recommendation, then entered a three-year sentence as § 4208 permits.

In assaying the actions of the District Judge, it is no longer decisive whether this was a misuse of § 4208. Without a doubt it was if the Judge was resorting to it to determine competency to stand trial and enter a plea. By its own terminology § 4208 may be used only where the Court is "entering a judgment of conviction." § 4208(a). It is thus wholly unsuited to a determination of mental competency to stand trial. Indeed, for this very situation § 4244 provides a workable and flexible mechanism before trial,[4] just as § 4245 does when pre-existing incompetency is apprehended after trial.[5] But these obvious conclusions compel a like conclusion that the District Judge was not using § 4208 for any such purpose. The question remains, however, whether, conceding a propriety of its use in the first instance, did the information generated by, and reflected in, that Report require any new or further action?

As to that we are again confronted with an unusual situation. Two questions are really presented, though each springs from these same facts. First, was it error in that original criminal trial not to do something further? Second, even if it was can that error now be reached? This brings into sharp focus the fact that mere trial errors may not be reviewed or corrected in a § 2255 proceeding. Dunn v. United States, 5 Cir., 1961, 288 F.2d 889. Of course that distinction may be vital since it is quite conceivable that on a direct appeal from the conviction, a lesser showing of doubtful mental competency would suffice than in a collateral attack. The case provides a further curious twist. For it is the unique situation in which the very same information presented in the § 2255 proceeding as the ground requiring relief was not only known to the sentencing Court, but it was before the sentencing Court in the very same form.

Despite these unusual complications, we think that from the viewpoint solely of the 1961 proceeding under § 2255, the information reflected in the § 4208 Prison Report of 1960 was such as to require a further hearing to determine judicially whether Petitioner was competent to stand trial.[6] Two things

---

4. § 4244 provides: "Whenever * * * prior to the imposition of sentence * * * United States Attorney has *reasonable cause to believe that a person charged* with an offense * * * *may be presently insane or otherwise so mentally incompetent* as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, * *. Upon such a motion *or upon a similar motion in behalf of the accused,* or upon its own motion, the court shall cause the accused, * * *, to be examined *as to his mental condition* by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed * * * to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of * * * such mental incompetency in the accused, the court shall hold a hearing * * * at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist,

and make a finding with respect thereto. * * * A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury." (emphasis supplied) 18 U.S.C.A. § 4244.

5. § 4245 provides that when the prison authorities certify "that there is probable cause to believe that such person was mentally incompetent at the time of his trial," they are to make a report to the Attorney General, after which "the court shall hold a hearing * * *." 18 U.S. C.A. § 4245.

6. A further complication exists. Under F.R.Crim.P. 20 the transferee Court may only accept a plea of guilty or *nolo contendere.* On a finding, then or now, of mental incompetency to stand trial, the District Court in Alabama would have to relinquish further jurisdiction to the District Court in Florida.

are required to elevate the case to one compelling a hearing. The first is that it raises a question of such fundamental importance as to be within the reach of § 2255. On that Gregori now eliminates all doubt. The second is whether, in the words of § 2255, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."

That latter question inevitably presents the problem of interpreting, analyzing and drawing inferences from a medical, psychiatric report. We are by no means saying that we have yet reached, if we ever will, the point where the use of psychiatric terminology closes the door to analysis of its minimal legal sufficiency by the Judge unaided by the expert. But we are quite certain that Judges do not have the training and experience to permit them to conclude as a medico-legal fact that one diagnosed by the experts as "schizophrenic reaction, chronic undifferiated type, suspected," either is not suffering in fact from such condition, or if so, that it is not of such a nature as to have left the person incapable, within the immediate past, of having an adequate awareness of criminal proceedings against him. Just what the examining doctors meant by the term "suspected" is unknown on this record. It was accompanied by an expressed professional desire to have the Petitioner under further observation so that the psychiatrists would be "able to confirm" whether "he is suffering with a schizophrenic illness." The seriousness of their concern was reflected by the expert's conclusion that there was "evidence of a more serious mental deteriorating process occurring." This factor immediately raised the further dual problems of how extensive the deterioration was and how long it had been going on.

It is just such uncertainties in this new and rapidly developing field which have led us in the many cases cited to hold that where the Report, as here, shows on its face serious mental conditions existing at a time immediately after the plea or sentencing, the Judge may not reach the portentous conclusion of mental competency solely on the basis of such ex parte medical-psychiatric or institutional reports. A further judicial hearing must be held, the exact nature of which we need not here blueprint.

Of course, we cannot escape the conceptual oddities of this record. Apparently by our holding a Judge must read more into the report in 1961 than he saw in 1960. Ostensibly this appears to be a second appeal, and here a substitute for the appeal he did not take. But this is really not so. What we hold is that with the information then and now disclosed in the Prison Report, the Judge ought not to have gone on with the case until mental competency to stand trial was judicially determined. Doing so in the § 2255 proceeding, the Judge will simultaneously determine what he should have found earlier.

Reversed and remanded.