**William R. DAUGHERTY, Appellant,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.**

**No. 23791.**

United States Court of Appeals
Fifth Circuit.

Nov. 27, 1967.

Request for Rehearing En Banc
Denied Jan. 30, 1968.

William E. Hall, Jr., Houston, Tex., for appellant.

Gilbert J. Pena, Asst. Atty. Gen., Austin, Tex., Sam R. Wilson, Asst. Atty. Gen., Houston, Tex., for appellee.

Before RIVES and WISDOM, Circuit Judges, and CONNALLY, District Judge.

CONNALLY, District Judge:

This is an appeal, in forma pauperis, from the denial by the District Court of Daugherty's application for the writ of habeas corpus. As was the case in the District Court, appellant attacks two convictions for robbery by assault had in the District Court of Haskell County, Texas. After a full evidentiary hearing on the points raised here, as well as others not now urged,[1] the District Court found the appellant not to be confined in violation of his constitutional rights.

Appellant's personal history is dotted with a series of convictions and other confrontations with the law, as well as with certain bizarre behavior evidencing a state of mental and emotional instability, the significance of which will more fully appear hereafter. His criminal record reveals that he was sentenced to one year in a reformatory school at the age of 15, was convicted on separate occasions of automobile theft and murder, and was subsequently arrested and charged with driving while intoxicated, assault, and assault with intent to murder. Finally, in December of 1959, he was arrested

---

1. (a) That a confession, and plea of guilty were coerced;

   (b) That he was arrested without a warrant, and without probable cause.

and charged with robbery by firearms in two counts, and kidnapping. On a plea of guilty being entered to two offenses of robbery by assault, the two robbery by firearms charges were reduced to the lesser included offenses; the allegation of a prior felony conviction (for enhancement of punishment) was dropped; and the kidnapping charge dismissed.

While serving an earlier sentence for murder in the state penitentiary, appellant was examined by a psychiatrist and was administered a course of shock treatments. He cut off one of his own fingers, cut his heel tendons several times, slashed his wrists, and intentionally fractured his forearm while in prison. In July of 1959, two doctors examined appellant and determined that he was mentally ill and required "observation and/or treatment." The County Court of Dickens County, Texas issued an order adjudicating him "mentally ill" under Vernon's Annotated Civil Statutes of Texas, art. 5547–31 et seq.[2] Appellant was committed to the Big Springs State Hospital, but escaped shortly thereafter. In October of 1959 he was again brought into custody, examined, adjudged "mentally ill" and committed to the hospital. He escaped the day after his commitment and remained at large until arrested and charged with the armed robbery counts now under attack, which were committed December 23, 1959.

The state trial court appointed William P. Ratliff, Esq., to represent appellant in the trial of the cases. The attorney conferred with Daugherty for approximately 15 to 20 minutes on the date of appointment, well in advance of trial, during which time he advised him fully of his rights in the matter, including the right to trial by a jury. Daugherty did not suggest a defense based on insanity, al-though his commitment to the hospital was discussed, but made it clear that he intended to plead guilty and was himself negotiating with the prosecutor over the sentence to be recommended. The conversation further divulged the fact that Daugherty had previously signed a confession admitting the commission of the offenses.

Prior to arraignment, the prosecuting attorney and Mr. Ratliff discussed the matter of appellant's competency with the trial judge, Honorable Ben C. Chapman. According to the statement of Judge Chapman, both attorneys assured him that the defendant gave every appearance of complete sanity. At arraignment, appellant revealed to the Court his wish to plead guilty. The Court made full inquiry of both counsel as to the defendant's mental condition. Daugherty assured the Court that he was of sound mind, knew the difference between right and wrong, and knew what he was doing when he committed the robberies. Thereupon the Judge declared that he appeared sane,[3] and the plea was accepted.

Appellant contends primarily that he was denied the effective assistance of counsel, and that the District Court's contrary conclusion was erroneous. In support of his position he argues (1) that the brevity of consultation between Daugherty and his attorney is sufficient to indicate inadequate preparation for the defense of a charge of such a serious nature and (2) that counsel's failure to assert the defense of insanity, though fully advised as to the availability of such strategy, is further evidence that the representation was only perfunctory or pro forma.

Mr. Ratliff, at the time of his appointment, was a highly respected attorney, experienced in both civil and crim-

---

**2.** Article 5547–83(b) specifically provides that such a determination and commitment, "without a finding that he is mentally incompetent, does not constitute a determination or adjudication of the mental competency of the person and does not abridge his rights as a citizen or affect his property rights or legal capacity."

**3.** Texas law provides that a guilty plea may not be accepted unless it plainly appears that the defendant is sane. See, Vernon's Ann.Tex.C.Cr.P., art. 26.13 (1965), substantially re-enacting Tex.C. Cr.P., art. 501 (1925).

inal matters. Although this fact alone does not establish his effectiveness in a particular case, neither does brevity of consultation, without more, establish ineffectiveness. Williams v. Cox, 350 F.2d 847 (10th Cir. 1965). Cf. Williams v. Beto, 354 F.2d 698 (5th Cir. 1965). Furthermore, counsel's failure to assert mental imcompetence as a defense appears to have been a strategical move, the propriety of which is not open to question under these circumstances. In light of Daugherty's apparent mental awareness and the seriousness of the punishment should the defense fail,[4] it cannot be said that the decision was inadvisedly made. Under the tests outlined in Williams v. Beto, supra, it appears that Ratliff's representation was more than sufficient to meet the constitutional requirements.

> " * * * relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation." 354 F.2d at 704.

Appellant's second contention concerns a matter of some importance to the administration of criminal justice in the courts of Texas.[5] As is sometimes the case, the problem may best be illustrated by setting forth, at the outset, what is not in issue. Unlike the majority of habeas corpus cases of this nature, the precise question of appellant's mental competence at the time of his trial in the state court is not before us now, nor was it before the District Court. It was specifically excluded by petitioner's counsel.[6] The issue we decide is this: Whether, in light of Daugherty's psychiatric history, the failure of the state trial court to conduct a hearing, *sua sponte*, and over the protest of the defendant and his counsel, to determine his mental competence to stand trial operated to deprive him of his constitutional right to a fair trial.

On the question of incompetence to stand trial, Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), establishes as the test:

> "[W]hether he (the defendant) has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), teaches that on a showing of sufficiently strong facts it may become the duty of the trial judge to conduct a hearing on such issue on his own initiative; and that a failure to do so, where justified by the facts, deprives the defendant of a constitutionally fair trial.

Before it may be said that the trial judge denied the petitioner a fair

---

4. Faced with three capital felonies, enhanced by a prior felony conviction, he certainly would have received life imprisonment, possibly death.

5. While raised as an afterthought in the trial court (R. p. 4), it is pressed vigorously here. Essentially the same point was raised by petitioner in a prior proceeding in the District Court (C.A. 14526, S.D.Tex. Nov. 15, 1962). From an adverse decision there, petitioner did not appeal.

6. Counsel stated to the District Court:
   " * * * there is no contention made at this time that he was or was not mentally competent. This is not a question before this Court at this time and we have not attempted to bring such a question before the Court." (R. pp. 39–40).
   Counsel stated further:
   "The attack that is made on this present conviction is not made upon the ground that the man was insane at the time. This is an affirmative defense, as Counsel so aptly pointed out, and some courts have held this can be raised at a later date, and some I believe have held it can not. This is not the reasoning in asking that this man's writ be granted." (R. p. 50).
   While counsel may have been referring to the date on which the offense was committed, rather than the date of trial, less than a month elapsed in this interval.

trial, it must appear that the facts and circumstances which came to his attention were sufficient to indicate the necessity of a hearing (see dissenting opinion of Mr. Justice Harlan in Pate v. Robinson, 383 U.S. at p. 388, 86 S.Ct. 836). We hold that this is not such a case. There is not the slightest indication that at the time of trial Daugherty was unable rationally and understandingly to consult with his counsel, or that he did not have a rational and factual understanding of the charges against him. He consulted not only with his attorney, but he was able as well to "consult" with the district attorney in his own behalf, repeatedly and at length. He was able to understand the charges against him sufficiently to bargain, and to bargain effectively, with respect to them, as result of which some were reduced and another dismissed. Further, the state trial judge made a determination that the petitioner was mentally competent to stand trial. He was aware of the question; inquired into the matter with all counsel and with petitioner personally; was familiar with the facts recited above as to petitioner's sometimes irrational behavior; and ordered that the case proceed. (See, for comparison, State of Texas v. Graves, 380 F.2d 676 (5th Cir. July 14, 1967), on the question of voluntariness of a confession.)

Unfortunately, we know that self-mutilation by convicts, to escape arduous prison labor, is not an uncommon practice. The early diagnosis that petitioner needed "observation and/or treatment" means little, as he escaped from the hospital on each occasion shortly after commitment, and no in depth study of his condition was ever reported. This set of facts is to be contrasted with the long history of bizarre and criminal episodes found in Pate and with the stronger set of facts in Lee v. Alabama, 386 F.2d 97 (5th Cir. June 27, 1967).

Of course, Daugherty does not now seek a return to the status of his case which prevailed at the beginning of the trial when he was charged with three capital offenses He does not desire that his competence be determined now. He desires a new trial now, only on the two reduced charges to which he entered the plea of guilty.

Concluding, we observe that here, as in every case where competence to stand trial is suggested, there is a temptation to return the case to the district court for a hearing on this question of competence. If what has been said above does not preclude this action, then the appellant's position which he has steadfastly maintained should do so. He seeks only a holding that the state trial judge, on the facts then before him, should have held some further hearing on his own motion, and that he be tried again on the two charges to which he plead guilty. The facts here do not warrant such action.

The action of the trial court was right and is

Affirmed.

RIVES, Circuit Judge (dissenting):

Being firmly of the opinion both that Daugherty did not have the effective assistance of counsel for his defense against the two robbery charges and that his constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial, I respectfully dissent.

The two robberies were committed on December 23, 1956. Daugherty was arrested on December 26 and on the same day signed a written confession as to the commission of both robberies. On January 5, 1960, indictments were returned, and on January 8, counsel was appointed to represent Daugherty. Upon conviction, as the majority notes (footnote 4 to majority opinion), "he certainly would have received life imprisonment, possibly death." In the light of his confession, the most likely, if not the only possible, defense was insanity. Yet it is without dispute that his appointed counsel spent no more than fifteen or twenty minutes in conferring with Daugherty. That conference took place on January 8, 1960, in a room at the courthouse just prior to Daugherty's arraignment. Daugherty's

testimony as to the substance of that conference was:

"I went in a little room with Mr. Ratliff and he asked me had I signed a statement, and I told him yes, sir, they had a statement. I told him that I wanted—there's a little tiny county around there and I told him I would like to be tried somewhere else and also be given a sanity hearing, and he told me if he was appointed my attorney that he wouldn't ask for these changes.

"I said, 'Well, sir, you're not going to be my attorney.'

"Q. Did you tell him you had been previously committed to the mental institution in Big Springs?

"A. Yes, sir. He talked to me about that.

"Q. Approximately how long did you talk with Mr. Ratliff on that date?

"A. Approximately 15, 20 minutes.

"Q. And that is main contents of your conversation with him?

"A. Yes, sir. That was it.

"Q. When was the next time that you saw Mr. Ratliff?

"A. The evening when I got the 75 years.

"Q. All right. Did you ever see him in jail at any time?

"A. No, sir. He never came to jail.

"Q. The next time you saw him is the time you were again taken before the court, is that correct?

"A. That's right."

Mr. Ratliff's affidavit introduced in evidence deposed as follows:

"I discussed the cases with Mr. Daugherty on January 8, 1960. He told me at that time that he was trying to deal with the District Attorney and that he had signed a confession and was going to make the best deal that he could with the District Attorney. Mr. Daugherty was brought from the jail and I conferred with him in a private room, at which time he told me that he had signed a confession and that he was negotiating with the District Attorney for a lesser sentence. I advised Mr. Daugherty that he did not have to plead guilty and that he was entitled to a jury trial if he so desired, but he informed me that he had signed the confession and that it did not appear that he could beat the cases."

On January 8, following this fifteen or twenty minute conference, Daugherty entered a plea of not guilty to each of the two indictments (R. pp. 84, 107). Mr. Ratliff then left solely to Daugherty the making of a "deal" to plead guilty. By January 19 it was made known to the court that Daugherty was ready to plead guilty. According to the affidavit of Judge Chapman, the State trial judge,

"As I remember it, the attorney for the state and the attorney for the defendant had discussed among themselves and with the court the mental condition of the defendant and the court was assured that in the opinion of each of said attorneys the defendant was sane and knew the difference between right and wrong and knew what he was doing at that time. The defendant was brought into open court and his case was called for trial. Both the state and the defendant announced ready for trial, a jury was waived by the defendant, and at that time the defendant was questioned as to his mental condition; and the attorney for the state, the attorney for the defendant and the court were of the opinion that the defendant knew the difference between right and wrong and that he was then a person of sound mind; and after this matter had been explored the defendant was then tried for said offenses."

Mr. Ratliff was, of course, present when the pleas of guilty were entered, but took no part other than to announce that the defendant was ready. Before accepting the plea in each case, Judge Chapman questioned Daugherty as to his sanity. In the case first called, the questions and answers were as follows:

"THE COURT: Are you a person of sound mind?

"THE DEFENDANT: I guess I am.

"THE COURT: Well, do you know whether you are or not?

"THE DEFENDANT: Well, I know right from wrong I guess.

"THE COURT: Have you ever been charged with insanity or confined in an institution for the insane?

"THE DEFENDANT: Yes, sir, I have.

"THE COURT: When was that?

"THE DEFENDANT: Two different occasions.

"THE COURT: You have been released from those, however?

"THE DEFENDANT: I don't know; I ran off the last time I was over there.

"THE COURT: Where was that?

"THE DEFENDANT: Big Springs.

"THE COURT: I see.

"MR. ADKINS [District Attorney]: He was discharged in December prior to the commission of the offense by the Big Spring Hospital.

"THE COURT: Did you know that?

"THE DEFENDANT: No, I didn't know it.

"THE COURT: All right. Well, in other words you think you are a person of sound mind; you understand the difference between right and wrong?

"THE DEFENDANT: Yes.

"THE COURT: You knew what you were doing when you did this?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right, it appearing to the Court you are sane, your plea of guilty is received. Have a seat."

In the other case the inquiry as to sanity was as follows:

"THE COURT: Have you ever been charged with insanity? I want to ask you this again. I believe you stated a few minutes ago you had been in a mental institution at one time?

"THE DEFENDANT: Yes, sir.

"THE COURT: I believe Mr. Adkins' records show you have been discharged from that; do you know that?

"THE DEFENDANT: I've got his word for it.

"THE COURT: In other words you think you are a person of sound mind and know what you are doing in this trial?

"THE DEFENDANT: I know the difference between right and wrong.

"THE COURT: It appearing to the Court you are sane, your plea of guilty is received."

Formal judgments of conviction were then entered and Daugherty was sentenced in each case to "Seventy-five (75) years in the State Penitentiary."

If Daugherty had not been an indigent, can anyone imagine that employed counsel in a capital case would have done no more than confer with his client for fifteen or twenty minutes? Yet every defendant, rich and poor alike, should stand equal before the law. Griffin v. Illinois, 1956, 351 U.S. 12, 17, 76 S.Ct. 585, 100 L.Ed. 891; Coppedge v. United States, 1962, 369 U.S. 438, 447, 82 S.Ct. 917, 8 L.Ed.2d 21, n. 13 and cases there cited. In Gideon v. Wainwright, 1963, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, it was said that, "This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." It may be added that this noble ideal cannot be realized if the standard of effectiveness of the poor man's appointed counsel is lower than the standard required of counsel employed by defendants able to pay fees. The standard relied on by the majority is quoted from Williams v. Beto, 1965, 354 F.2d 698, 704:

"It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation."

It must be noted that even that standard requires "adequate opportunity for

conference and preparation." I submit, however, that the quoted statement of that standard so misplaces the emphasis that it can be construed to require only an inferior type of service. This Court's ruling should require the State to provide for every defendant the equal protection of the laws. It seems to me that my oath of office to "administer justice without respect to persons, and do equal right to the poor and to the rich," [1] compels me to do all in my power to require really effective service from appointed counsel. I much prefer the statement of the standard contained in the latest expression on the subject from this Court:

"An indigent defendant is entitled to the effective assistance of counsel. Any experienced trial lawyer knows that a purported trial without adequate preparation amounts to no trial at all. That much was indicated in Powell v. State of Alabama, 1932, 287 U.S. 45, 57 [53 S.Ct. 55, 77 L.Ed. 158]:

" ' * * * during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself.'

"This Circuit has been strict in its requirement of the effective assistance of counsel. The test was well stated in MacKenna v. Ellis, 1960, 280 F.2d 592, 599.

" 'We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.'

"See also Mosley v. Dutton, 5 Cir. 1966, 367 F.2d 913, 916.

"Again in Roberts v. Dutton, 1966, 368 F.2d 465, we held that there had been no adequate preparation of the defense, and adopted the rule as well stated by Judge Murrah for the Tenth Circuit in Willis v. Hunter, 1948, 166 F.2d 721, 723:

" 'We think that the right to the effective assistance of counsel contemplates the guiding hand of an able and responsible lawyer, devoted solely to the interest of his client; who has ample opportunity to acquaint himself with the law and facts of the case, and is afforded an opportunity to present them to a court or jury in their most favorable light.' "

Brooks v. State of Texas, 5 Cir. 1967, 381 F.2d 619.

Judged by that standard, Daugherty did not have the effective assistance of counsel. The majority suggests that "counsel's failure to assert mental incompetence as a defense appears to have been a strategical move * * *." Any experienced trial lawyer knows that sound strategy cannot be formulated without "consultation, thorough-going investigation and preparation." [2] Daugherty's appointed counsel made no investigation whatever as to his client's sanity. Even today we are in the dark as to the advisability of a defense on the ground of insanity. Indeed, the fifteen or twenty minutes allowed for conference was scarcely sufficient to permit Daugherty to relate to his counsel the long history of his troubles which might indicate mental illness.

That history included leaving grammar school while in the fifth grade, being sent to reform school when he was fifteen, thereafter serving a year in the penitentiary for stealing gasoline and then five years for stealing a car; cutting off his finger, cutting his heel tendons seven times, slashing his wrists on two different occasions, breaking his arm; receiving some 25 or 30 shock treatments; being examined by two psychiatrists in October 1959, only about two months be-

---

1. 28 U.S.C.A. § 453.

2. Powell v. State of Alabama, 1932, 287 U.S. 45, 47, 53 S.Ct. 55, 77 L.Ed. 158.

# 818

fore the robberies were committed, each of whom diagnosed his condition as "maniacal, depressive psychosis," upon those certificates being "adjudged mentally ill and requires observation and/or treatment in a mental hospital for his own welfare and protection or the protection of others," and his escape from the hospital to which he was committed. The prosecuting attorney informed the State trial judge that, "He was discharged in December prior to the commission of the offense by the Big Spring Hospital." He neglected to say that Daugherty's discharge was not as a cured patient but because he escaped.

If the facts and circumstances which came to the trial judge's attention were not sufficient to indicate the necessity of a sanity hearing, the only reason must be the inadequate preparation of the case by Daugherty's appointed counsel. The trial judge relied on assurances from the attorneys and on his own questioning of Daugherty, which has been quoted, all of which I submit are totally inadequate. Probing the depths of a human mind is a well-nigh impossible task even for a trained psychiatrist. It is not safe to rely on the opinions of attorneys or even judges as to the sanity of defendant.[3]

My brothers say that Daugherty was able "to bargain effectively"; they seem to think that he made a good deal. Frankly, I don't think so. Seventy-five years seems a long time, virtually the same as a life sentence, for a defendant twenty-five years old. Whether the deal was good or bad, however, is not for us to judge. On this record it seems clear to me that Daugherty should have received an adequate hearing on his competence before he was put to trial, and also that he did not have the effective assistance of counsel. I therefore respectfully dissent.

Before BROWN, Chief Judge, TUTTLE, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON and CLAYTON, Circuit Judges.

On Request for Rehearing en Banc

PER CURIAM.

A member of the Panel hearing this cause having requested a poll on whether to grant rehearing en banc and a majority of the Judges in active service having voted against the granting of a rehearing en banc,

It is ordered that rehearing by the Court en banc is denied.

---

3. Van De Bogart v. United States, 5 Cir. 1962, 305 F.2d 583, 588.