**Edwin L. LOFTIS, Petitioner-Appellant,**

**v.**

**W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellee.**

No. 73–3968.

United States Court of Appeals, Fifth Circuit.

July 9, 1975.

Rehearing and Rehearing En Banc Denied Oct. 10, 1975.

See 520 F.2d 1406.

Donald A. Smyth, Staff Counsel, Tex. Dept. of Corrections, Brazoria, Tex., for petitioner-appellant.

Thomas H. Routt, Asst. Atty. Gen., Sarah Shirley, Joe B. Dibrell, Jr., Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before RIVES, GEWIN and GOLD-BERG, Circuit Judges.

GEWIN, Circuit Judge:

This appeal from denial of a state prisoner's § 2254 habeas corpus petition is principally controlled by our recent decision in Fitzgerald v. Estelle, 505 F.2d 1334 (5th Cir. 1974) (en banc), dealing with effective assistance of retained counsel. Under the *Fitzgerald* standard for evaluating the adequacy of representation by defense counsel we find that the appellant prisoner has not established a claim reaching constitutional proportions and therefore affirm the judgment of the district court.

Loftis challenges the constitutionality of his conviction in a Texas court for the unlawful possession of heroin. On March 6, 1967 federal and state agents, relying on an informant's tip and direct surveillance, secured a warrant authorizing the search of his Dallas home. The authorities executed the warrant, and

encountered Rosemary Servance, Loftis's common-law wife, attempting to destroy gelatin capsules later determined to contain heroin. After placing Servance under arrest, the agents thoroughly searched the premises and discovered various drug paraphernalia. During the search, Loftis returned to his home but, upon sensing the presence of law enforcement officers, turned to flee. Two officers gave chase, caught him, and in so doing observed him throw down two match boxes, one of which contained capsules of heroin. Loftis then accommodatingly told the arresting agents, "You don't have to look any more, that's all there is, you've got it. I was hoping that I could throw it before you caught me." Both Loftis and Servance were indicted under Texas law for the unlawful possession of heroin.

On April 28, 1967 the attorney who eventually represented Loftis and Servance at trial offered his legal services to the couple.[1] Loftis initially declined, but inquired as to how he might get his trial postponed until he could secure other counsel. The attorney explained that for a $100 fee he could guarantee a continuance, but only if he presented himself to the court as Loftis's attorney of record. Loftis paid the attorney $100 and at a hearing on May 2, trial was set for May 22, 1967. When that date arrived, Loftis still had not retained different counsel, and he paid the attorney assisting him an additional $100 to secure a second continuance. This second motion for continuance was overruled and Loftis went immediately to trial represented by the attorney who had assisted him thus far. Counsel then unsuccessfully moved the court to sever Loftis's case from that of his common-law wife since she had already pleaded guilty to possession of narcotics.

At trial, defense counsel failed to object to the admission into evidence of the narcotics seized during the search of Loftis's home and subsequent pursuit. Counsel did object, however, to introduction of certain narcotics paraphernalia

1. Appellant's brief p. 10.

found in the home and the incriminating statements which Loftis made at the time of his arrest. During the trial, Servance, who had already pleaded guilty, suffered severe withdrawal symptoms in the presence of the jury. At the close of the government's case, the defense rested without presenting any evidence. Loftis was convicted and received a sentence of fifty years.

On direct appeal he challenged the trial court's denial of his motions for continuance and severance. The Texas Court of Criminal Appeals affirmed the conviction, finding that the motions failed to comply with statutory requirements. Loftis v. Texas, 433 S.W.2d 704 (Tex.Cr.App.1968). Loftis immediately filed a state habeas corpus petition which was denied by both the convicting and appellate courts. In December 1969, he sought § 2254 relief in federal court, claiming primarily that the trial court's decision allowing co-defendant Servance to plead guilty before the same jury which tried him was in violation of his right of cross-examination secured by the Sixth Amendment right to confrontation. Loftis further challenged the admission into evidence of his "confession" made at the time of his arrest and the trial court's refusal to sever his case under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). On appeal, this court held that considering the weight of the government's evidence, "not the slightest doubt could be entertained as to [Loftis's] guilt", and any of these alleged errors, even if violative of the Constitution, were harmless. This court sua sponte requested that the parties brief and argue the issue of ineffective assistance of counsel, but the imprecise nature of the record on this issue precluded our reaching a decision on the merits. Loftis v. Beto, 450 F.2d 599 (5th

Cir. 1971). The district court has not held an evidentiary hearing on this issue in considering either of Loftis's two federal habeas corpus petitions.

Loftis subsequently filed a second state habeas corpus petition, but the Texas trial and appellate courts denied it on the grounds that the issues presented had been raised and rejected on direct appeal.

In this second federal habeas corpus proceeding, Loftis challenges the validity of the search warrant, the search of his home, and the effectiveness of his counsel prior to and during the trial. He advances the following indicia of his counsel's ineffectiveness: the attorney was completely unprepared for trial since he anticipated securing a second continuance; he failed to question or subpoena potential witnesses who were present at the time of Loftis's and Servance's arrests; he did not challenge the sufficiency of the search warrant or the introduction into evidence of the seized heroin; he did not seek to have Servance removed from the court room when she began suffering painful withdrawal symptoms in the jury's presence; and he presented no testimony or evidence whatever in Loftis's defense.

█ Our decision in Fitzgerald v. Estelle, *supra*, delineates the standards for measuring the effectiveness of privately retained counsel.[2] *Fitzgerald* confirms that two independent constitutional provisions safeguard the right to effective assistance of counsel. First, the Fourteenth Amendment due process clause standing alone is violated when defense counsel's ineffectiveness is so blatant as to render the entire trial fundamentally unfair. The state's complete failure to provide fair and impartial justice constitutes the requisite "state action." 505 F.2d at 1336.

2. While our first *Loftis* opinion suggested the possibility that petitioner's counsel may have been court-appointed, we now determine that his performance must be evaluated according to the standards governing retained counsel. Loftis personally hired the attorney to secure a continuance, with the knowledge that the lawyer would represent himself to the court as counsel of record. Loftis failed to hire any other counsel during the period of the three week continuance. He went to trial knowing that the attorney whom he first hired would continue to represent him. Moreover, his brief acknowledges that his trial counsel was retained.

*Fitzgerald* advances a different standard for measuring the Sixth Amendment guarantee of effective assistance of retained counsel, which is applied to the states through the Fourteenth Amendment. While acknowledging that the Sixth Amendment covers a greater range of errors than Fourteenth Amendment due process, we nevertheless observed that the standard for evaluating retained counsel "must be assessed more strictly" to avoid placing unrealistic burdens on state trial judges who have no control over which attorney a defendant may wish to employ. Perhaps the most significant limitation on the applicability of the Sixth Amendment to the performance of retained counsel is the requirement of some state involvement in the ineffective representation:

> To find state involvement in retained counsel's conduct which is adjudged to be less than reasonably effective, yet not so grossly deficient as to render the proceedings fundamentally unfair, it must be shown that some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused. That the trial judge and the prosecutor have such a capacity and duty is unquestionable. Therefore, if the trial judge or the prosecutor can be shown to have actually known that a particular defendant is receiving incompetent representation and takes no remedial action, the state action requirement is satisfied. If they directly participate in the incompetency, it is even more so. Furthermore, if the incompetency of a retained attorney's representation is so apparent that a reasonably attentive official of the state should have been aware of and could have corrected it then again the state action requirement is satisfied.

505 F.2d at 1337. *Fitzgerald* expressly rejected the argument that state action is automatically present in every ineffectiveness of retained counsel case merely "because the state adjudicatory machinery is inextricably intertwined with the conduct of an accused person's retained attorney."

■ Loftis has failed to demonstrate that his counsel was so blatantly ineffectual that a reasonably attentive prosecutor or judge should have been aware that he was receiving inadequate representation. Under the established guidelines for measuring the effectiveness of defense counsel, any shortcomings or errors in judgment made by Loftis's attorney simply do not reach constitutional proportions. According to MacKenna v. Ellis, 280 F.2d 592 (5th Cir. 1960), cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961),

> [w]e interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

*See also* Herring v. Estelle, 491 F.2d 125 (5th Cir. 1974), and cases cited therein. Moreover, the Sixth Amendment naturally does not embody a guarantee that the client must be satisfied with the results of his attorney's labors. Loper v. Beto, 440 F.2d 934 (5th Cir. 1971), vac., 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

■ Judged by these standards, we cannot conclude that the attorney in question presented such an inadequate defense that a competent state official should have been aware that Loftis was receiving ineffective representation. As requested, counsel did secure one continuance, after Loftis permitted him to represent to the court that he was counsel of record. Loftis failed to replace him with another attorney during the interim period. While Loftis's defense may have suffered somewhat when counsel was forced to trial immediately upon denial of the second motion for continuance, mere brevity of consultation is alone insufficient to establish a Sixth Amendment violation. Daugherty v. Beto, 388 F.2d 810 (5th Cir. 1967). Once the case was set for trial, defense counsel did attempt to sever Loftis's prosecution from that of Servance. The trial court's exer-

cise of discretion in denying this motion did not constitute reversible error.[3] *See* Loftis v. Beto, *supra*, 450 F.2d at 602. Additionally, in view of our earlier conclusion that the admission of the seized evidence and "confession" were, if errors at all, harmless because of the overwhelming evidence of guilt, counsel's failure to object to the admission of this evidence cannot constitute grounds for reversal.

Normally we would look with great skepticism at the fact that the trial judge did not remove Servance from the courtroom instead of letting her go through withdrawal before the eyes of the jury. Here, however, we have previously found that the evidence of Loftis' guilt was overwhelming. Servance's actions did not, of course, go to the veracity of the evidence. While the potential prejudice to the jury from her presence might call for a different result where there is less than overwhelming evidence, here her presence does not call for a reversal since there is no question but that a reasonable jury would have come to the same result as did the jury here.

Finally, we note that defense counsel vigorously cross-examined the state's witnesses and objected on numerous occasions to the prosecution's questioning. In sum, the record reveals no circumstances which might have apprised any state official that Loftis was receiving inadequate representation.[4]

Furthermore, we find no merit in Loftis's allegation that the search warrant was issued without a showing of probable cause. See United States v. Harris, 403 U.S. 573, 91 S.Ct. 2025, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Gonzales v. Beto, 425 F.2d 963 (5th Cir. 1970), cert. denied, 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970). The ensuing search of the petitioner's home was therefore valid.

Affirmed.

RIVES, Circuit Judge (dissenting):

There has never been an evidentiary hearing on the question of effective assistance of counsel. In an appeal from an earlier denial of habeas corpus, this Court had expressly stated that "Under

---

**3.** In reviewing this discretionary action of the trial judge, as approved by the Texas Court of Criminal Appeals, we are mindful of the Supreme Court's admonition in Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940), that federal courts should normally defer to the decisions of state trial and appellate courts in applying state procedural rules.

**4.** In our earlier review of Loftis's habeas corpus claims, we sustained the district court's conclusion that any error resulting from allowing Servance to plead guilty in the presence of the jury trying Loftis was harmless in view of the overwhelming evidence of his guilt. Loftis v. Beto, 450 F.2d 599. After a careful review of the evidence, we observed that the evidence left "no room for the jury to entertain any reasonable doubt as to guilt." Furthermore, in addressing the denial of the motions to continue and to sever, we acknowledged that separate trials might have been preferable, but indicated that the trial court did not abuse his discretion. In so ruling, we suggested that because the prosecution's evidence was so overwhelming, any constitutional errors would be harmless:

> where, as here, there is not the slightest indication that defendant would have been

able to present any defense in a separate trial not available to him in this trial, or that he could have cast any doubt into such a trial as to the evidence of his guilt, we understand the law to be that the constitutional faults, if any, are not grounds for the federal court to set aside the state conviction.

450 F.2d at 602.

In *Loftis*, we expressly reserved judgment on the ineffective assistance of counsel claim based on the fact that the same attorney represented both defendants. The grounds for ineffective assistance raised in the instant appeal apparently were not before this court in the initial suit. It is also apparent that no evidentiary hearing was ever held on the Sixth Amendment issue.

While we did not initially hold that the harmless error doctrine vitiated Loftis's Sixth Amendment challenge, there was a strong suggestion that it did undermine any unextraordinary constitutional discrepancy. Thus, while we explicitly reserved consideration of the ineffectiveness of counsel issues, we indicated that the evidence against Loftis was so persuasive that the constitutional errors raised in his petition for habeas corpus were probably harmless.

all of these circumstances no issue concerning effectiveness of counsel will be decided." Loftis v. Beto, 5 Cir. 1971, 450 F.2d 599, 602. I think that we should remand for an evidentiary hearing on that issue.

The record reveals that, at an evidentiary hearing, Loftis might be able to show that he was denied his sixth and fourteenth amendment rights. However guilty Loftis may be, he may have been harmed by ineffectiveness of counsel. Loftis was sentenced to fifty years' imprisonment. His counsel's attention, prior to trial, had been devoted entirely to matters of continuance and severance and the district court was so informed. A hearing may have disclosed the probability that effective counsel would have plea-bargained for some lesser sentence than fifty years' imprisonment.

I do not mean to imply that the harmless error rule should be applied. However guilty, Loftis had a constitutional right to a trial not fundamentally unfair, and to the effective assistance of counsel. A hearing would probably have demonstrated that his trial was a mere mockery of justice. It appears that he was forced to trial before the same jury which had heard his common-law wife plead guilty. Two of the five judges of the Texas Court of Criminal Appeals dissented from the affirmance of Loftis' conviction and elaborated upon a theme stated in the dissent's opening paragraph:

"A matter of plain and simple fundamental unfairness is here involved. This appellant should not have been forced to trial on his plea of not guilty at the same time and before the same jury, who was required to find his co-defendant, with whom he was jointly indicted as acting together, guilty upon her plea of guilty and to assess her punishment while attempting to pass on the issue of appellant's guilt or innocence under a charge on principals."

Loftis v. State, Tex.Cr.App., 1968, 433 S.W.2d 704, 707.

The mockery may have been intensified when, without objection from Loftis' counsel, the jury witnessed his wife suffering severe withdrawal symptoms, screaming, crying, and holding her stomach while her head lay on the counsel table.

In addition to circumstances which would render the trial fundamentally unfair, a hearing would probably disclose other instances in which counsel failed to meet the sixth amendment standard of fairness and knowledge of such instances by the state trial judge or prosecutor.

I respectfully dissent.