UNITED STATES of America, Plaintiff,

v.

Dwayne Harold SMITH, Defendant.

No. LR–CR–95–19.

United States District Court,
E.D. Arkansas,
Western Division.

Jan. 6, 1997.

Paula Casey, United States Attorney, Patrick C. Harris, Assistant United States Attorney, Little Rock, AR, for Plaintiff.

Dale E. Adams, Montgomery, Adams & Wyatt, Little Rock, AR, for Defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

On June 3, 1996, Dwayne Harold Smith (Dwayne Smith) was found guilty by a jury of Aiding and Abetting in the Use of Interstate Facilities in the Commission of Murder–for–Hire, a Title 18 U.S.C. §§ 1958 and 2 charge.[1]

Dwayne Smith's sentencing was scheduled for August 28, 1996. At the very beginning of the sentencing proceedings, Dwayne Smith advised the Court that he was not satisfied with the services rendered by his attorney, during the pretrial as well as the trial phase of this action, in that his attorney failed to call witnesses who resided in the States of Arkansas and Louisiana; and that

some of these witness, if not in fact all, could verify and confirm, among other things, that at the alleged time of the murder for which he is charged with aiding and abetting, he was at a location other than the site of the murder; and that he had supplied his attorney with names and addresses of these potential witnesses in advance of the scheduled trial dates. Dwayne Smith asked the Court to replace his attorney of record and afford him a new trial.

After carefully considering Dwayne Smith's request, the Court continued the sentencing proceeding and appointed his current attorney, Dale E. Adams, Esq., to represent Dwayne Smith.[2]

On September 18, 1996, Mr. Adams filed a motion for a new trial alleging:

"... [d]efendant has provided present counsel with witnesses which [d]efendant says were provided to his former counsel but were not called.

.    .    .    .    .

"... that a new trial be granted in the interest of justice based on a failure to call the witnesses provided and on ineffective counsel."

The Court scheduled a hearing on Dwayne Smith's motion for new trial as well as sentencing for December 11, 1996.

During the course of the evidentiary hearing, Mr. Adams called Chris Tarver, Esq., Dwayne Smith's initial counsel, Dwayne Smith, Linnie Smith, mother of Dwayne Smith who resides in New Orleans, Louisiana, Renitha Smith, sister of Dwayne Smith, and Thomas L. Crosthwait, private investigator authorized by the Court to render investigative service on behalf of Dwayne Smith at the direction of Mr. Adams.

Mr. Tarver testified that Dwayne Smith gave him approximately six names of individuals to be called as witnesses during the first

---

1. On March 27, 1992, Daryl Cooperwood was murdered in a vacant lot near Knight's Grocery Store in Beebe, Arkansas. Charles "Edwin" Butch Davidson, Earnest Lee Smith and Dwayne Smith were jointly charged with aiding and abetting in the use of interstate commerce facilities in the commission of murder-for-hire.

2. Dwayne Smith's initial jury trial commenced on November 27, 1995. Because the jury was unable to reach an unanimous verdict, the Court declared a mistrial and a second trial began on May 28, 1996. The jury returned a guilty verdict on June 3, 1996.

trial as well as the second trial; that he interviewed these potential witnesses and subpoenaed all of them, but called only two of these individuals to testify for Dwayne Smith. Tarver further stated that he did not call the remaining witnesses because their testimony did not support Dwayne Smith's story that he was somewhere else playing domino at the time the murder was committed.

Sabrina Jackson who would, allegedly, confirm this account, according to Dwayne Smith, advised Tarver that she was not sure where Dwayne Smith was at the time of the murder. In addition, Sabrina Jackson advised Tarver that she was of the view that Dwayne Smith possessed the potential of becoming violent. Because of these views, Tarver decided not to call Sabrina Jackson even as a character witness, inasmuch as, Tarver concluded, such testimony would open the door to testimony on cross examination that would be more damaging to Dwayne Smith's defense than beneficial. In essence, Tarver elected not to call all of the witnesses that Dwayne Smith had listed for strategic reasons.

Dwayne Smith testified that he never received a copy of the government's case file from his initial attorney, Mr. Tarver; that during the period of his incarceration, prior to his first trial which resulted in a mistrial, Tarver accepted only one collect phone call and refused other attempts, on the part of Dwayne Smith, to communicate with Tarver or his staff telephonically; and that Tarver visited with him only four times during his period of incarceration.[3]

Dwayne Smith further testified that during the time frame between the declaration of a mistrial of the first proceedings and the beginning of the second trial, he had only one visit with Mr. Tarver. Dwayne Smith further testified that the lack of communication with counsel required him to file a "pro se"

motion relating to his defense approximately three days before the first trial commenced.

Renitha Smith, Dwayne Smith's sister who resides in New Orleans, testified on direct that during 1992, Dwayne Smith resided with a "girl friend", Nettie Jones, and that when Dwayne Smith came to Arkansas in February, 1992, he brought with him approximately $1,100.00 in cash. On cross examination, the sister testified that Dwayne Smith did not earn the money by working, but from "drugs."

Linnie Smith, Dwayne Smith's mother, testified that during 1992 and 1993, Dwayne Smith, resided at times with his girl friend and on occasions in her home; that during January and the early part of February, 1992, Earnest Lee Smith, Dwayne Smith's father, made telephone calls from Searcy, Arkansas, to her residence in New Orleans; that she received practically all of the calls which were, in effect, inquiries regarding Dwayne Smith's injuries that he sustained as a result of falling down a flight of stairs. On cross examination, she testified that she was employed at a Baptist Church day care center and her working hours are from 7:30 a.m. to approximately 5:30 p.m.[4]

Thomas L. Crosthwait, private investigator, testified that he traveled to New Orleans in effort to locate Nettie Jones, but was unable to find her. Nettie Jones' testimony would have been offered to support Dwayne Smith's claim that he was residing with her in January and February of 1992.

## DISCUSSION

Dwayne Smith, a relatively young person who will spend the rest of his life in prison, contends forcefully that he was denied his right to the effective assistance of counsel because his trial counsel did not call, essentially, three witnesses, Sabrina Jackson, Len-

3. Dwayne Smith was arrested and taken into custody on May 19, 1995, and remained in custody pending his initial trial which occurred on November 27, 1995. Dwayne Smith was released on personal recognizance with electronic monitoring on December 15, 1995, following the Court's issuance of an order declaring a mistrial and scheduling a new trial for February 5, 1996.

4. One crucial as well as essential factor in the Government's theory of its case against Dwayne Smith is the assertion that Earnest Lee Smith, Harold Smith's father, made telephone calls from Searcy, Arkansas to Dwayne Smith in New Orleans and caused Dwayne Smith to travel to Arkansas to murder Daryl Cooperwood.

nie Smith and Renitha Smith Robertson, whose testimony, allegedly, would have benefited his defense during the second trial conducted in this matter resulting in a jury verdict of guilty; that Mr. Tarver did not supply him with a copy of the Government's case file; that Tarver failed to communicate with him on a regular basis and keep him abreast of the status of the action; and that because of the lack of communication with his attorney, he filed a "pro se" motion, a few days before his first trial, in order to raise matters relating to his defense.[5]

■ The Sixth Amendment to the Federal Constitution mandates that every criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. On the other hand, in an effort to safeguard and secure a defendant's Sixth Amendment right, counsel is not required to engage in conduct that is unacceptable or contrary to those standards of the adversary process. In other words, if there is no good-faith and above-board defense to the criminal charges, counsel may not create one. While it is readily plain that the Sixth Amendment mandate does not encompass the notion that a defendant is entitled to an "errorless counsel", this Court is of the view that counsel has the obligation not only to communicate with defendant in order to be prepared to participate in and conduct a truly adversarial proceeding, but also to create the feeling and belief on the part of a defendant that his interest is being protected and advanced. This is, indeed, most vital in avoiding the appearance of lack of concern when a defendant is immature, uneducated and facing serious and complex charges. See *United States v. Cronic*, 466 U.S. 648, 657, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984) (stating that right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial). The Court would emphasize, however, that mere brevity of consultation alone is insufficient to establish a violation of the Sixth Amendment entitlement to the effective assistance of counsel. See *Loftis v. Estelle*, 515 F.2d 872, 875 (5th Cir.1975) (observing that the Sixth Amendment naturally does not embody a guarantee that the client must be satisfied with results of his attorney's labors).

■ Actually the central question currently before the Court is whether there is a reasonable probability that absent the alleged errors of defense counsel the fact finders would have had a reasonable doubt of Dwayne Smith's guilt of the charges in this action.

A defendant who asserts ineffective assistance of counsel undertakes a heavy burden of proving that his counsel's "performance was deficient" and the representation fell below the "objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In the recent case of *Fast Horse v. Class*, 87 F.3d 1026, 1028 (8th Cir.1996), the court made the following observation which is, indeed, dispositive of the question to be resolved in this Court:

"We need not decide whether Fast Horse's counsel was ineffective for failing to have Ms. Basham testify. When 'it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, [that] course should be followed.' *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). A defendant is prejudiced if 'there is a reasonable probability [that is, a probability sufficient to under-

---

5. On July 12, 1995, the Court received a letter under date of July 10, 1995, from Dwayne Smith stating:

I am writing this letter from Pulaski County Jail. My concern—is that; I'm requesting a separate trial from my father; Mr. Earnest Lee Smith. Our court date is August 21, 1995, at 9:30 a.m. And also the other people that is involved with these charges. I know none of them with exception of my father. Would you please look into this matter for me.

On July 13, 1995, a copy of Dwayne Smith's letter was forwarded to Mr. Tarver and defendant was advised that "All communications with the Court should be through your attorney." A copy of the defendant's letter was also filed in this proceeding.

**838**

mine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the [trial] would have been different.' "

Given the uncontradicted testimony of Sandra Querry, girl friend of Earnest Lee Smith, introduced by the Government in support of its case, the Court is not persuaded that Dwayne Smith has shown that his defense was prejudiced by Tarver's failure to call any individuals named by Dwayne Smith as potential witnesses, particularly Sabrina Jackson, Lennie Smith and Renitha Smith Robertson, or any other alleged acts of neglect.

Sandra Querry testified that Charles Edwin "Butch" Davidson ("Butch" Davidson) contacted her and offered her $5,000.00 to kill Daryl Cooperwood. Sandra Querry declined the offer, but conveyed this information to Earnest Lee Smith, her boyfriend and Dwayne Smith's father. A few days later, Dwayne Smith arrived in Searcy, Arkansas, from New Orleans. Dwayne Smith visited Sandra Querry, on several occasions, in her apartment and as a matter of fact, the evidence disclosed, he spent at least one night at her apartment.

On March 27, 1992, Daryl Cooperwood was murdered on a vacant lot near Knight's Grocery Store, Beebe, Arkansas. After the murder, Sandra Querry obtained the $5,000.00 from "Butch" Davidson and delivered the money to Earnest Lee Smith. A day or two later, while visiting Sandra Querry in her apartment, Dwayne Smith informed Sandra Querry that he had received $2,000.00 from his father. Sandra Querry immediately replied that the consideration was $5,000.00. Dwayne Smith's response was "daddy has gotten to me again."

The Government also presented evidence disclosing that "Butch" Davidson and others were actively engaged in the distribution of illegal drugs in the White County, Arkansas area; that during the Fall of 1991, Daryl Cooperwood had unwittingly introduced David Moore, Searcy, Arkansas, Regional Drug Task Force Agent, to Tim Scarbrough, stepson of "Butch" Davidson, for the purchase of marijuana. Tim Scarbrough was later charged and pled guilty to selling marijuana and was sentenced to a period of incarceration at the Arkansas Department of Correction. The Government also presented evidence indicating that "Butch" Davidson had stated to associates that he had Daryl Cooperwood killed after Tim Scarbrough was sent to prison.

After carefully reviewing the evidence offered during the course of the trial as well as that offered in support Dwayne Smith's request for a new trial, the Court is convinced that the testimony of Sabrina Johnson, Lennie Smith and Renitha Smith Robertson would not have created reasonable doubt in the minds of the jurors as to the guilt of Dwayne Smith of charges in this action.[6]

Accordingly, Dwayne Smith's Motion for New Trial will be denied and the proceedings will now move to the sentencing phase.

Entered *Nunc Pro Tunc* this 6th day of January, 1997, as of December 11, 1996.

---

**6.** See *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984) (stating that a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.... and admonishing further that a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support).