Arthur J. NATHANIEL, Petitioner-Appellant,

v.

W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellee.

No. 73-1341.

United States Court of Appeals, Fifth Circuit.

May 3, 1974.

David Yancey White, Corpus Christi, Tex. (Court-appointed), for petitioner-appellant.

John L. Hill, Atty. Gen., Glenn R. Brown, Lang A. Baker, Gilbert Pena, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before BROWN, Chief Judge, and RONEY and GEE, Circuit Judges.

GEE, Circuit Judge:

Nathaniel believes his troubles may have started with an incident in his childhood. His mother threw an iron and hit him in the head while he attempted to hide from her under a bed. The trouble which he has brought to this court began when the police found him hiding under the house of the woman he had just raped. At other times he says that his troubles started when his mother, the sheriff, and some others sent him away to the insane place. The record indicates that County Court, Wharton County, Texas, adjudicated Nathaniel to be of unsound mind in 1943 and sent him to Rusk State Hospital, Rusk, Texas, where he stayed until he escaped in 1945. Nathaniel's troubles led him to prison and now to federal court, seeking a writ of habeas corpus. In this court he seeks reversal of the district court's denial of his claim that the state judge at his rape trial should have conducted an independent evidentiary inquiry into Nathaniel's mental competence to stand trial. We conclude that the district court correctly decided that no bona fide doubt of Nathaniel's competence to stand trial existed at the time of his trial but we vacate the lower court's judgment refusing relief and remand for possible consideration now of the sole issue of Nathaniel's competence to stand trial in 1957.

It appears that Nathaniel has spent virtually all his life in some sort of confinement. Prior to his stay in the mental hospital he spent an unknown but substantial amount of time in reformatories. He remembered being put in the reformatories for burglarizing houses. After the stay in Rusk Hospital he was convicted of burglary in 1948 and in 1955. In 1957, about a month after release, he was arrested and charged with rape. At trial, Nathaniel's appointed counsel raised insanity at the time of the offense as the only defense. The trial judge instructed the jury that a presumption of insanity resulted from the 1943 adjudication, but in a brief trial the jury found Nathaniel guilty and assessed 99 years imprisonment.[1]

After exhausting his state remedies Nathaniel brought this federal habeas corpus action. The district court held an evidentiary hearing at which the participants focused upon the issue of whether the trial judge should have inquired into Nathaniel's mental competence to stand trial in 1957.[2]

---

1. In 1960 another state court sentenced Nathaniel to life imprisonment for murder of an inmate.

2. Nathaniel riased other errors: (1) ineffective assistance of counsel at trial; (2) denial of the right to appeal; (3) use of a coerced confession; (4) racial discrimination in selection of the jury; and (5) failure to afford a prompt appearance before a magistrate. The district court found that the allegations were meritless and the issues were not raised on appeal.

At the evidentiary hearing, Nathaniel, his appointed counsel at the rape trial, De Anda, and a psychologist testified. Although the transcript of the original trial had been lost, the docket sheet, the list of subpoenaed witnesses, and the charge to the jury were available.

De Anda testified essentially that Nathaniel was unable to offer any meaningful assistance in the preparation of the defense. Nathaniel suffered from a severe speech impediment at the time and there was expert testimony that Nathaniel possessed the mentality of a six to nine year old child, or approximately 75% of mature intellect. He remembered that Nathaniel's version of the offense was incoherent and absurd. De Anda recalled that in trial preparation he had to resort to outside sources, including the complainant Cynthia Tubbs, to develop information about the incident. As De Anda remembers the facts it seems that after gaining entry to the house and raping Cynthia Tubbs. Nathaniel ordered her into the bathroom with the purpose of locking her in. Discovering that the door locked only from the inside Nathaniel ordered her to lock the door. She had taken that action without being asked. The police discovered Nathaniel hiding under the Tubbs' house a short time later. Apprehensive of racial overtones, De Anda concentrated on preventing the death sentence; he could not recall anyone raising or mentioning the issue of Nathaniel's capacity to stand trial. Although the defense of insanity at the time of the crime was submitted to the jury, De Anda expected no more than a mitigating effect from it.

The manner and content of Nathaniel's testimony at the evidentiary hearing was equivocal. He did not give his correct name or age and stated he was unable to read or write, but exhibited a rudimentary familiarity with his constitutional rights distracting in such a context. The psychologist, who had interviewed Nathaniel prior to the evidentiary hearing, testified that he was probably a psychopath or sociopath with pronounced mental deficiency.

Counsel and the district court apparently viewed the question at the evidentiary hearing as limited to whether all the facts known to the state trial judge raised a bona fide doubt sufficient to have required the trial judge to hold *sua sponte* an evidentiary inquiry into Nathaniel's competence to stand trial under Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The district court concluded that they did not.

 Trial of an accused while he is incompetent violates due process. Distinguishable from the standard used to determine mental culpability for a criminal act,[3] the test for determining mental competence to stand trial is:

> whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.

Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960). Long before *Pate,* the federal courts recognized a right to raise in post-conviction proceedings the constitutional issue of competence to stand trial. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); Gregori v. United States, 243 F.2d 48 (5th Cir. 1957); Van De Bogart v. United States, 305 F.2d 583 (5th Cir. 1962); Floyd v. United States, 365 F.2d 368 (5th Cir. 1966). In *Pate,* however, the Supreme Court recognized an additional right: not only was subjection to trial while incompetent unconstitutional, but failure to accord an adequate hearing on that issue at the time of trial, when a bona fide doubt as to the defendant's competence appeared, violated due process.[4] Thus, since *Pate,* a habeas pe-

---

3. Blake v. United States, 407 F.2d 908 (5th Cir. 1969); cf, Swinney v. United States, 422 F.2d 1257 (5th Cir. 1970).

4. See n. 1 to Justice Harlan's dissent in *Pate,* 383 U.S. at 387–389, 86 S.Ct. at 843–844, 15 L.Ed.2d at 823–824.

titioner may raise not only incompetence in fact but also, in a proper case, the absence of a determination of competence contemporaneous with trial.

Essential, however, to a claim of failure to inquire into competence to stand trial—the *Pate* innovation—is evidence at trial raising a bona fide doubt of competence. In *Pate* counsel placed defendant's sanity at the time of the crime in issue, but he also pursued throughout the trial the issue of defendant's "present sanity,"[5] eliciting considerable evidence on the issue. In Lee v. Alabama, 386 F.2d 97 (5th Cir. 1967), the issue of Lee's competence at the time of trial was raised by a determination, made about three months before trial by an Alabama lunacy commission, that Lee was then insane. The function of the lunacy commission report was to provide information to aid the trial judge "in determining what proceedings shall be taken in respect to the defendant," 386 F.2d at 107.

In our case, by contrast, the issue of competence to stand trial was not raised, though insanity at the time of the offense was. De Anda testified that Nathaniel suffered from a severe speech impediment and that his version of the incident, insofar as comprehensible, was incredible. Nothing, however, indicates that the trial judge was aware of these problems. That he did know to some extent of Nathaniel's history of imprisonment does not raise a bona fide doubt of competence. The sole circumstance pointing weakly but directly toward possible incompetence at trial was the 1943 civil adjudication of mental unsoundness, made when defendant was an adolescent. The state trial judge was aware of this adjudication. Did it raise a bona fide doubt of competence to stand trial?

We conclude that in the circumstances presented here it did not. *Pate* and *Lee* present defendants whose behavior was characterized by amply-attested, frank and extravagant symptoms of derangement: in Pate's case, irrational fears, occult and threatening voices, waking visions of snakes and elephants; in Lee's, delusions of grandeur and persecution, found by a lunacy commission of physicians to render him insane less than four months before trial. Lee had killed his own father. Pate had functioned as a veritable Angel of Death, killing his baby son, his common-law wife, and seriously attempting suicide more than once. Nathaniel, though low in mentality and constantly in trouble of one sort or another, presented a far less compelling case. His civil adjudication of mental unsoundness as a teenager was 14 years stale at time of trial. It may have resulted from any of innumerable mental conditions, many of which would not necessarily have rendered him incompetent to stand trial. The district judge noted other factors in his memorandum order which further diminish the force of Nathaniel's earlier adjudication:

Petitioner contends a 1943 Wharton County Court adjudication of insanity and the subsequent commitment to Rusk State Hospital, from which he escaped before being released, in itself raised a doubt of competency. This Court disagrees. That judgment was fourteen years old at the time of Petitioner's trial for rape. Subsequent to that commitment, Petitioner had twice been tried and convicted of other crimes (once as recently as two years prior to this trial). There is nothing before this Court which points to any issue of competency. The age of the county court judgment of insanity and the two intervening trials and convictions certainly lessen the probative weight of the Wharton County judgment. While that judgment is also relevant, it cannot, standing alone, be considered determinative.

The Petitioner's sole defense at the state court rape trial was insanity at the time the offense was committed.

5. The shorthand term commonly used in Illinois at that time for competence to stand trial. 383 U.S. 384–385, 86 S.Ct. 841–842, 15 L.Ed.2d 821–822, n. 6.

The state vigorously disputed his insanity and the jury returned a verdict of guilty. The jury had to first determine the Petitioner was *not insane* in order to bring in such verdict. And, the jury did so in the face of instructions that the 1943 judgment created a presumption of insanity. Three psychiatrists were subpoenaed to testify as to Petitioner's sanity. As a basis for his opinion, such an expert would almost certainly have examined Petitioner. While such an examination would have as its purpose the determination of Petitioner's sanity at the time of the offense, one would expect any doubts as to competence to stand [trial] to become apparent during such an examination. There is no evidence that anyone, psychiatrist or layman, suggested that the Petitioner was incompetent or insane at the time of the trial.

■ Although we agree with the district court's determination under the principles established by *Pate,* our inquiry is not concluded. A determination that insufficient doubt existed of a defendant's competence at the time of trial does not preclude a post-conviction inquiry into competence to stand trial. As noted above, courts have long recognized the right to such an inquiry. *Pate* did not disturb that right but sought only to diminish the occasions for such determinations by requiring an inquiry contemporaneous with trial if a bona fide doubt then existed.

■ The court below focused on only the distinctive, *Pate* issue but we conclude, from reviewing the record, that both the *Pate* issue and the substantive issue of his competence at the earlier trial were presented by Nathaniel's petition. Nathaniel's pro se pleadings were inartfully drawn, but the state recognized one of his contentions as "a mental disorder which prevented him from assisting in the defense of his trial." On remand the court should consider this undecided issue.

We, of course, reach no conclusion here about Nathaniel's competence to stand trial in 1956. But from consideration of the evidence presented below, we do find that he has presented sufficient facts to create a "real, substantial and legitimate doubt as to [his] mental capacity . . . to meaningfully participate and cooperate with counsel. . . . " Bruce v. Estelle, 483 F.2d 1031, 1043 (5th Cir. 1973). See also, Clark v. Beto, 359 F.2d 554 (5th Cir. 1966). Such a doubt entitles him to meaningful consideration of his claim.

■ On remand the burden is on Nathaniel to prove his allegations and such proof should be clear and convincing. Bruce v. Estelle, 483 F.2d 1031, 1043 (5th Cir. 1973).[6] If Nathaniel proves his incompetency, the court shall set aside the judgment of conviction and remand the case to the state courts for a new trial, at which time Nathaniel's mental capacity then to stand trial will be open to an adequate hearing.

Vacated and remanded.

---

**6.** The procedure ordered in Lee v. Alabama, 386 F.2d 97, 108 (5th Cir. 1967), on remand, 291 F.Supp. 921 (M.D.Ala.1967), aff'd, 406 F.2d 466 (5th Cir. 1968) :

"[I]t will be the duty of the . . . court . . . to decide whether it can conduct an adequate hearing on the question of [defendant's] competency to stand trial. . . . If it cannot, it will be under the obligation to set aside the judgment of conviction. . . ."

is not appropriate in Nathaniel's situation because we find no *Pate* violation as we did in *Lee.*