Tules V. ZAPATA, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 76–4348.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1979.

Phyllis C. Coci, Richard L. Griffin, Huntsville, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Gilbert J. Pena, Asst. Atty. Gen., David M. Kendall, 1st Asst. Atty. Gen., Joe B. Dibrell, Douglas M. Becker, Randy Drewett, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before CLARK and GEE, Circuit Judges, and LYNNE,* District Judge.

GEE, Circuit Judge:

Appellant Zapata killed her husband on May 3, 1971, shooting him to death with a revolver which she reloaded in the process. Three months later she was tried in the Texas courts and convicted of murder over her plea of self defense. She now seeks habeas corpus relief, urging the following as her grounds: (1) that the trial court should have ordered a competency hearing sua sponte; (2) that her attorney was ineffective in failing to request a competency hearing; and (3) that she was denied due process at her murder trial because at the time of her prosecution she was incompetent. State remedies have been exhausted as to these contentions. The state trial court did not conduct a competency hearing; none was requested. The state habeas court refused to conduct an evidentiary hearing on either the incompetency claim or the claim of ineffective legal assistance. The federal habeas court likewise dismissed the petition without conducting an evidentiary hearing.

We glean the following which bears on her then competency from the state court record of her trial. Certain of her answers to questions about the shooting were vague and incoherent, though she was much more facile in giving testimony favorable to herself than in answering awkward questions. Dr. Gonzaba, Zapata's personal physician, testified at trial concerning defendant's state of mind. He stated that Zapata had suffered from "severe emotional problems" at least from 1968–71 and during that time had used antidepressants. Dr. Gonzaba further testified that, shortly after her arrest, Mrs. Zapata behaved abnormally, crying and giggling at the same time. She was also having halucinations of men trying to kill her. Gonzaba is a medical doctor but not a psychiatrist. Zapata's emotional problems in 1968 were, according to Gonzaba, most likely the result of surgery for removal of an ovarian tumor. On the basis of reports made by nurses in the hospital to which Zapata was transferred several days following her arrest, Dr. Gonzaba concluded that Zapata had experienced halucinations.

Zapata's trial occurred on August 16–18, 1971. After her conviction and sentencing, she applied for a transfer from jail to a hospital. In this connection, Dr. Landgrebe, a psychiatrist, examined Zapata. On September 22 he testified at the hearing on her motion to transfer. Dr. Landgrebe diagnosed Zapata as having involutional melancholia, a menopausal illness causing a state of severe depression. Landgrebe also said Zapata had some feelings of paranoia and *was legally insane* at the time he examined her. He administered several electroshock treatments to her. Dr. Landgrebe knew of no attempt by Zapata to commit suicide. After shock treatments she stopped saying that her life was not worth living. Landgrebe believed Zapata's condition to be treatable. He thought that Zapata's mental illness had been aggravated twice: by the shooting itself and by her conviction and sentencing. It is not clear whether Landgrebe meant that Zapata's illness appeared twice or whether it was aggravated twice.

* Senior District Judge of the Northern District of Alabama, sitting by designation.

Twice, after sentencing, Zapata was transferred from jail to a hospital. State hospitals have twice determined that Zapata was ready to be returned to prison. Since Zapata has been in TDC facilities, she has been given neither electroshock therapy nor antidepressant medication.

*The State court's failure to conduct hearings sua sponte.*

 The touchstone for competency to stand trial is: "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has rational as well as factual understanding of the proceedings against him." *Dusky v. U. S.*, 362 U.S. 402, 402, 80 ·S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court interpreted the due process clause to require that a criminal defendant be afforded an adequate hearing on competency to stand trial whenever the trial judge becomes aware of a bona fide doubt concerning that defendant's competence. *See Nathaniel v. Estelle*, 493 F.2d 794, 796–97 (5th Cir. 1974).[1] When the trial court does ignore a bona fide doubt as to the defendant's competence to stand trial, *Pate* dictates a nunc pro tunc competency hearing if a meaningful inquiry into the defendant's competence can still be had. If one cannot, the defendant must be retried, if found competent, or released. *See Drope*

*v. Missouri*, 420 U.S. 162, 183, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. at 386–87, 86 S.Ct. 836; *Martin v. Estelle*, 546 F.2d 177, 180 (5th Cir.), cert. denied, 431 U.S. 971, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977). Even when a bona fide doubt of competency is not raised at trial, the defendant can still contest his competence to stand trial through post-conviction relief, *see Nathaniel v. Estelle*, 493 F.2d at 796, and can obtain a nunc pro tunc competency hearing upon proving a "substantial doubt" about his competency. *Nathaniel v. Estelle*, 493 F.2d at 798. When the competency issue is raised on post-conviction relief, however, the defendant is not entitled to a determination of whether a meaningful hearing can be held. *Bruce v. Estelle*, 536 F.2d 1051, 1056 n.3 (5th Cir. 1976), cert. denied, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *Nathaniel v. Estelle*, 493 F.2d at 798 n.6. The ostensible reason for this difference is that in cases of *Pate* violations the state is itself responsible, at least in part, for the absence of a competency hearing at a time when one could meaningfully have been held. Consequently, the state should bear some responsibility for whatever difficulties the defendant may encounter in proving prior incompetency.[2]

 The question whether these state court proceedings reveal a substantial doubt about petitioner's competency to stand trial is a very close one. We have concluded, as

---

1. The term "bona fide doubt" comes from an Illinois statute, Ill.Rev.Stat. ·ch. 38, § 104–2 (1963), which was under consideration in *Pate v. Robinson*. The *Pate* Court did not establish "bona fide doubt" as a constitutionally mandated standard but found it constitutionally adequate. *See Drope v. Missouri*, 420 U.S. 162, 172–73, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). We have nonetheless applied that standard, *see Nathaniel v. Estelle*, 493 F.2d at 796, because it is no less helpful than any other standard that might be imagined.

Regardless of the formula used, three factors are to be considered in determining whether a *Pate* violation has occurred: any history of irrational behavior, defendant's trial demeanor, and prior medical opinion. *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Davis v. Alabama*, 545 F.2d 460, 464 (5th Cir. 1977).

2. A *Pate* violation is usually thought of as an error committed by the trial court during the course of the trial. It may be, however, that a *Pate* violation could also occur shortly after trial as when the trial judge is considering a motion for new trial or, as here, when the judge is deciding whether to grant a transfer motion. If a bona fide doubt about competency is raised at a hearing on any such post-trial motion, the trial court's failure to order an immediate competency hearing might mean that the last chance for a meaningful nunc pro tunc hearing has been lost by reason of the state's inattentiveness. We need ńot decide this question, however, because we hold that the trial judge did not err in failing to order a competency hearing upon becoming aware of Landgrebe's testimony given at the hearing on Zapata's transfer motion.

the subpart of our opinion next following indicates, that taken together with the post-trial testimony of Dr. Landgrebe the evidence does clear this threshold, albeit barely. The question remains whether it rises to that level at which we must hold that the state trial judge abused his discretion in failing to interrupt the trial proceedings on his own motion and order such a hearing. The issues are very similar, but we have concluded that they are not identical and that Zapata's evidentiary showing falls between them. Several factors found this conclusion. The first of these is that no contention of incompetency *during the trial* was made to the state trial judge, either at the trial itself or even at the post-trial proceedings at which Dr. Landgrebe's testimony was received. As the Supreme Court has noted, "judges must depend to some extent on counsel to bring issues into focus." *Drope v. Missouri*, 420 U.S. at 176–77, 95 S.Ct. at 906. In the second place, Dr. Landgrebe's testimony related to her condition when he examined her *after* the trial, and a part of his conclusion of derangement turned on his assessment of the effect on her of the conviction and sentencing itself. It asks too much of this busy trial judge that he, bearing in mind a contention not made, aggregate somewhat ambiguous post-trial testimony on an issue other than competency to stand trial with that received at trial to conclude that he should, sua sponte, grant a post-trial competency hearing.[3] Without the addition of Dr. Landgrebe's testimony, we do not believe the evidence raised a substantial doubt about Zapata's competency. Nor, given this ambiguity, do we believe that even with the addition of it the evidence of incompetency became sufficiently manifest that the state trial judge abused his discretion in failing to order a hearing on his own motion and so denied Zapata due process. *See Pate v. Robinson*, 383 U.S. at 387–91, 86 S.Ct. 836 (Harlan, J., dissenting). Were the contention one subject to waiver, doubtless it would have been waived by the manner in which petitioner's defense was conducted. As we observe below, however, it is not so subject, and hence we now directly face it, charged with a duty to assess the record and possessed of an opportunity for measured judgment in response to a square assertion of it which the state trial judge did not have. *See Drope v. Missouri*, 420 U.S. at 177, 95 S.Ct. 896. To it we now turn.

*Substantive incompetency.*

The issue whether the state trial court should have conducted an evidentiary hearing on the defendant's competence is distinct from the issue whether the defendant was in fact competent to stand trial. *See Nathaniel v. Estelle*, 493 F.2d at 796–98. This latter issue can be raised by way of request for post-conviction relief, even though no competency hearing was requested by the defendant during trial. The procedural default rule, *see Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *St. John v. Estelle*, 544 F.2d 894 (5th Cir.), *aff'd*, 563 F.2d 168 (5th Cir. 1977) (en banc); *Evans v. Maggio*, 557 F.2d 430 (5th Cir. 1977); *Jimenez v. Estelle*, 557 F.2d 506 (5th Cir. 1977), does not apply in this case. Under Texas law one does not waive the issue of competency by failing to request a competency hearing at trial. *See Ex parte Tuttle*, 445 S.W.2d 194, 198 (Tex. Cr.App.1969). Moreover, as the Supreme Court suggested in *Pate v. Robinson*, one who is incompetent cannot waive his right to a competency hearing. 383 U.S. at 384, 86 S.Ct. 836. *Accord Floyd v. U. S.*, 365 F.2d 368, 377 & n.15 (5th Cir. 1966); *Sharp v. Beto*, 276 F.Supp. 871, 874–75 (N.D.Tex. 1967). *See also Nathaniel v. Estelle*, 493 F.2d at 797 (issue of incompetency not raised at trial but court remanded for hearing on that issue).

In order to be entitled to an evidentiary hearing on competence to stand trial, Zapata must present sufficient facts to cre-

---

**3.** As the Supreme Court has also noted, the finding of a *Pate* violation is made "more difficult by the fact that a defendant's mental condition may be relevant to more than one legal issue, each governed by distinct rules reflecting quite different policies." *Drope v. Missouri*, 420 U.S. at 176, 95 S.Ct. at 906.

ate a "real, substantial and legitimate doubt as to [her] mental capacity . . . to meaningfully participate and cooperate with counsel." *Nathaniel v. Estelle*, 493 F.2d at 798, *quoting Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973).

██ Careful study has persuaded us that the testimony of Dr. Landgrebe, based as it was on an examination of Zapata conducted only days after her trial, when taken together with that of Dr. Gonzaba, is sufficiently clear and convincing evidence as to raise a substantial doubt of Zapata's competency at trial and require a remand for a hearing in our district court on the issue. Dr. Landgrebe testified that she was legally insane when he examined her. The cause he assigned was menopause-connected, a circumstance which to the lay mind contra-indicates a sudden onset. Dr. Gonzaba, though not a psychiatrist, had already testified at trial that Zapata suffered from severe emotional problems and was halucinatory. We conclude that a substantial doubt is raised by this evidence, taken in the aggregate.

*Ineffectiveness of Counsel.*

 We have held that the standard for determining retained counsel to be ineffective is that the incompetency be so apparent that a reasonable official of the state should have been aware of it. *Fitzgerald v. Estelle*, 505 F.2d 1334, 1337 (5th Cir. 1974) (en banc), *cert. denied*, 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975). Such counsel must have been so grossly and obviously inefficient as to have rendered the proceedings fundamentally unfair. *Loftis v. Estelle*, 515 F.2d 872, 874 (5th Cir. 1975). Despite petitioner's contention that the self-defense theory advanced at trial was ludicrous, counsel appears to have had some grounds and strategy to elect that route instead of contending for incompetency or insanity. The corroborative testimony indicates some degree of validity in the attempt to convince the jury that petitioner should be acquitted outright. We cannot say that in so proceeding or in any other respect trial counsel evidenced obvious incompetence.

Having concluded that clear and convincing evidence in the state court record raises a substantial doubt about Zapata's competency to stand trial when she did, we remand for an evidentiary hearing conducted as directed in the en banc opinion herein. *Zapata v. Estelle*, 585 F.2d 750 (5th Cir. 1978).

VACATED AND REMANDED.