[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16023
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00462-CR-T-24-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMIE LEE CREWS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 17, 2010)

Before PRYOR, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Jimmie Lee Crews appeals from his conviction and 210-month sentence

imposed after a jury found him guilty of three counts of distributing a detectable amount of cocaine base. He argues that his conviction should be reversed because the district court erroneously denied his request for a mistrial based on a statement made in the government's closing argument. He also challenges his sentence, arguing that the district court's consideration of acquitted conduct violated his Fifth and Sixth Amendment rights and that his sentence was erroneously enhanced for obstruction of justice and possession of a firearm. After thorough review and consideration of the parties' briefs, we affirm.

I.

In the spring of 2008, the Polk County Florida Sheriff's Office made a series of undercover drug purchases from Jimmie Lee Crews. On April 24, 2008, an undercover detective and a confidential informant met Crews at a home in Lake Hamilton, Florida. The detective purchased $60 worth of crack cocaine from Crews, who retrieved 0.52 grams of crack cocaine from his right shoe and handed it to another individual to deliver to the detective. About a week later, on April 30, 2008, the detective again contacted Crews seeking to purchase crack cocaine. This time, she met Crews at his apartment, where he was observed sitting at a table with a scale and what appeared to be crack cocaine. Crews sold the detective 1.07 grams of crack cocaine for $100. And finally, on May 29, 2008, the detective

2

called Crews to arrange a third purchase. This time she met Crews at a gas station, where Crews exchanged 2.7 grams of crack cocaine for $200.

Law enforcement officers then executed a search warrant at Crews's apartment. At the time, Crews was observed walking outside the apartment and was ordered to the ground. In complying, he dropped a set of keys, which were used to open the back door to his apartment. In the process of executing the warrant, officers detected a strong odor of marijuana coming from a vehicle parked outside. Again using the keys obtained from Crews, they opened the trunk. Inside, officers found bags containing 755.5 grams of marijuana, 189.0 grams of crack cocaine, 1,614.2 grams of cocaine, digital scales, a cutting agent, and a license plate registered to Crews. In the backyard, officers found a white sock containing a loaded .38 caliber revolver stuffed in the crook of a tree and, a few feet away, a cooler containing 12 rounds of ammunition similar to the rounds in the loaded gun. In Crews's kitchen, they found a holster fitting the gun retrieved outside and a lid fitting the digital scale found in the trunk of the car.

Crews was charged in a six-count indictment. Based on the three sales to the undercover detective, Counts One through Three charged Crews with distributing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2. The remaining three counts related to the drugs

3

found in the trunk of the car outside Crews's apartment and charged him with possessing with intent to distribute at least 50 grams of cocaine base, 500 grams of cocaine, and marijuana, all in violation of §§ 841(a)(1) and (b)(1).

Crews pleaded not guilty and trial was set for February 2009. On February 24, 2009, however, Crews filed a sealed motion for competency examination, which a magistrate judge granted. He was then evaluated by a court-appointed psychiatrist, Dr. Donald Taylor. In his report to the court, Dr. Taylor noted that it was "possible that [Crews was] exaggerating his cognitive impairment in the hope that it will diminish his level of criminal responsibility." Nevertheless, Dr. Taylor ultimately concluded that Crews was incompetent to stand trial because he was impaired in "his ability to understand the nature and consequences of the charges and proceedings against him and to consult with his attorney with a reasonable degree of rational understanding." Dr. Taylor also concluded, however, that Crews was a candidate for further evaluation and that he could likely become competent in one to three months with treatment.

After his first report, Dr. Taylor was provided several recorded telephone calls Crews made from the county jail. Those recordings caused Dr. Taylor to revisit his initial conclusions regarding Crews and he submitted an amended evaluation to the court. In it, Dr. Taylor observed that Crews expressed intellectual

4

functioning "in the low average to average range." He also observed that Crews referred to reading and writing letters, despite reporting at the previous examination that he could not read. He observed that Crews "was aware of [his] upcoming psychiatric evaluation" and that Crews "made statements indicating that he wanted to 'win the evaluation'" because that meant "'[t]hey can't say I knew what I was doing, like I'm basically retarded,'" adding that "'[t]he jury can't do nothing to you.'" He also observed that Crews said: "'Once they put down that you're crazy they can't never say you changed'" and that "'[t]hey can't hold me accountable for nothing I did.'" From this, Dr. Taylor concluded that Crews "feigned cognitive impairment and ignorance of his charges and the legal process" at the time of his initial evaluation and that it was "probable that [Crews] is competent to stand trial." Noting Dr. Taylor's conclusion that Crews had feigned cognitive impairment in an effort to avoid trial, the magistrate judge agreed with Dr. Taylor's assessment and declared him competent to stand trial.[1]

Crews was then tried before a jury. The government presented its case and Crews elected not to testify or put on any evidence in his defense. The district court then instructed the jury prior to closing arguments and included the following instruction regarding Crews's decision not to testify or put on evidence:

[1]At a status conference regarding Crews's competency, Crews's counsel stated that she was "somewhat surprised by Dr. Taylor's initial report, and obviously we now know why."

It will be your duty to decide whether the Government has proven beyond a reasonable doubt the specific facts necessary to find the defendant guilty of the crimes charged in the Indictment.

\* \* \*

[E]very defendant is presumed by the law to be innocent. The law does not require a defendant to prove innocence or to produce any evidence at all; and if a defendant elects not to testify, you cannot consider that in any way in your deliberations. The Government has the burden of proving a defendant guilty beyond a reasonable doubt, and if it fails to do so you must find the defendant not guilty.

The jury then heard closing arguments. In her closing, Crews's lawyer reiterated that the law did not require the defense to put on any evidence. She concluded her argument by stating: "Now, I don't get to, uh, get back up here and talk to you, but what I would like you to do is listen to [counsel for the government], but I would like you to keep in mind, what would [I (Crews's lawyer)] say in rebuttal to that?" The government then gave its rebuttal argument. It opened by stating: "Ladies and gentlemen, there is no question that Jimmie Lee Crews was a distributer of drugs, specifically cocaine. There's no rebuttal, uh, no other evidence to suggest otherwise for the first three buys."

Crews objected and moved for a mistrial, arguing that the government's statement that there was "no rebuttal" was an impermissible comment on his right to remain silent and not to present evidence in his defense. The district court observed that the government's argument "could be construed [as referring] to

6

what you [Crews's lawyer] said in your closing argument." The government confirmed that was its intent, but acknowledged that it had been a "[b]ad choice of words." The district court denied the motion for mistrial. It granted Crews's request for a cautionary instruction, however, admonishing jurors that they should "keep in mind the Government has the burden of proof in this case and the defendant does not have any burden of proof."[2] The government reiterated this point in its summation:

> We have the burden of proof beyond a reasonable doubt. It never leaves us. It is our burden. But we're confident, ladies and gentlemen, and hope you agree with us, that we have, in fact, met that burden with compelling, solid, direct and circumstantial evidence.

After about an hour-and-a-half of deliberation, the jury found Crews guilty on Counts One through Three (relating to the three hand-to-hand sales to the undercover detective) but acquitted him on Counts Four through Six, which related to the drugs found outside the apartment.

The United States Probation Office then prepared its presentence report ("PSR"). Probation found Crews culpable for both the crack cocaine Crews sold to the detective and for the drugs found outside. As a result, Probation determined that Crews was culpable for a total of 288.195 grams of crack cocaine, 1,647.3 grams of powder cocaine, and 1,236.1 grams of marijuana. Probation also

---

[2]Crews did not object to the adequacy of the cautionary instruction.

7

determined that Crews was responsible for the gun found in the back yard, noting that the holster found in Crews's kitchen fit the gun and that the firearm was found in close proximity to a large quantity of drugs hidden in the car outside. Based on the drug quantities involved and, applying a two-level enhancement for possession of a firearm, Probation determined that Crews's base offense level was 34. With a Criminal History Category of VI, Crews's recommended guidelines range was 262 to 237 months.

At sentencing, Crews objected to the two-level enhancement for possession of a firearm and to consideration of the drugs found outside Crews's apartment because he had been acquitted of charges relating to those drugs. Probation also informed the court that the day before, outside of the time for filing objections to the PSR, the government had objected to its failure to include an enhancement for obstruction of justice based on Crews's feigned mental incompetency. Because the government's objection was not timely, the district court offered to continue the sentencing hearing so that Crews's counsel could prepare to address the issue. Although she objected to the government's late objection, Crews's counsel declined the district court's offer of a continuance and indicated that she was prepared to address the issue.

After hearing from the parties, the district court sustained the government's

objection and applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Based on Dr. Taylor's reports, the district court found that it was "clear that Mr. Crews thought he was gaming the system," that, although he may have some mental issues, "he certainly had enough knowledge to know that he was trying to game the system and get himself in a situation where the United States could not prosecute this crime," and that this resulted in several continuances.

The district court overruled Crews's objections to consideration of acquitted conduct and the application of the firearm enhancement. Regarding the acquitted conduct, the district court observed that "having listened to the evidence at trial, [it] was very surprised at the not guilty verdict," and found by a preponderance of the evidence that Crews possessed the drugs discovered in the trunk of the car. The district court likewise found Crews responsible for the gun found outside. Noting its proximity to the drugs discovered outside the apartment and the matching holster located in Crews's kitchen, the district court found that it was not unlikely that the firearm was related to the offense and therefore a two-level enhancement under § 2D1.1(b)(1) was appropriate.

After resolving the objections to the PSR, Crews's adjusted guidelines range would have been 324 to 360 months. The district court, however, varied

9

downward using a one-to-one ratio of crack to powder cocaine. This resulted in an advisory guidelines range of 168 to 210 months in prison. Considering the § 3553 factors, the district court sentenced Crews at the top-end of the guidelines range. According to the district court, it selected this sentence because Crews's criminal history was "just awful," beginning at an early age, containing numerous similar offenses, and reflecting a pattern that Crews resumes selling drugs as soon as he is released from prison. This appeal followed.

II.

Crews argues that his conviction should be reversed because the district court erroneously denied his motion for mistrial based on the government's statement in closing argument that there was no "rebuttal" to its case. According to Crews, this statement shifted the burden of proving his innocence to him and was an impermissible comment on his decision not to testify in his own defense.

Because the district court "is in the best position to evaluate the prejudicial effect of a statement," we review a district court's decision to deny a motion for mistrial for abuse of discretion. United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007). "A mistrial should be granted if the defendant's substantial rights are prejudicially affected. This occurs when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different." Id.

10

"As part of its obligation to prove guilt beyond a reasonable doubt, the prosecution may not make comments that would shift the burden of proof to the defendant." United States v. Bernal-Benitez, 594 F.3d 1303, 1315 (11th Cir. 2010); see also United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) ("[P]rosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence."). Likewise, the Fifth Amendment prohibits the government from commenting directly or indirectly on a defendant's failure to testify. Isaacs v. Head, 300 F.3d 1232, 1270 (11th Cir. 2002). We have explained that

> [a] prosecutor's statement violates the defendant's right to remain silent if either (1) the statement was manifestly intended to be a comment on the defendant's failure to testify; or (2) the statement was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so. The defendant bears the burden of establishing the existence of one of the two criteria. The comment must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement.

United States v. Knowles, 66 F.3d 1146, 1162-63 (11th Cir. 1995) (quotations and footnotes omitted).

We readily conclude that the district court did not abuse its discretion in denying Crews's motion for a mistrial. As an initial matter, it is not clear that the

11

government's comment was improper. Crews's counsel asked jurors in her closing argument to consider what she would "say in rebuttal" to the government's closing argument. As the district court pointed out, the government's statement could reasonably be interpreted as a direct response to the argument by Crews's counsel that the jury should ask itself what she, as Crews's lawyer, would say if given an opportunity to rebut the government's closing argument. Given that the government confirmed that this was its intent and that this interpretation of the government's statement was reasonable in the context in which it was made, the comment was not one that would necessarily be understood as a reference to the defendant's failure to testify. The prosecution's comment therefore did not violate Crews's rights not to testify in his defense.[3]

Moreover, even if the comment were improper, we have repeatedly explained that improper remarks by the prosecution may be cured by an instruction from the district court. See, e.g., United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009); Newsome, 475 F.3d at 1227. Immediately after the prosecutor's statement, the district court instructed the jury that the prosecution has the burden

---

[3]We note that the jury acquitted Crews on three of the counts, a result that was "surprising" to the district court in light of the substantial evidence of his guilt presented at trial. We think it obvious that the jury considered the evidence before it and held the government to its burden of proof. The impact of the statement, if there was any, was negligible and Crews cannot establish that the result of his trial would have been different absent the comment by the prosecution.

12

of proof, a point the government reiterated at the conclusion of its closing argument.  The district court's curative instruction was more than sufficient to remedy the prosecutor's statement.  That being so, the district court did not err, much less abuse its discretion, in denying Crews's motion for mistrial.

III.

Crews raises three challenges to his sentence.  First, he challenges the district court's consideration of acquitted conduct in calculating drug quantities for purposes of sentencing.  Second, he argues that the district court improperly enhanced his sentence for obstruction of justice.  And third, he complains that the district court improperly enhanced his sentence for possessing the firearm found in the tree outside his apartment.  We address each of these challenges in turn.

A.

Crews argues that the district court improperly attributed the drugs found outside his apartment to him, despite the fact that he was acquitted by the jury on charges relating to those drugs.   He argues that such consideration of acquitted conduct at sentencing violates his Fifth and Sixth Amendment rights.

We acknowledge Crews's impassioned plea regarding the consideration of acquitted conduct at sentencing, and we recognize that reasonable minds can and do differ as to the constitutionality of the practice.  See, e.g., United States v. Faust,

13

456 F.3d 1342, 1349–53 (11th Cir. 2006) (Barkett, J., specially concurring). As Crews concedes, however, binding precedent in this Circuit allows district courts to consider acquitted conduct in sentencing, so long as the government proves the conduct in question by a preponderance of the evidence and the sentence imposed does not exceed what is authorized by the jury's verdict.[4] See, e.g., United States v. Culver, 598 F.3d 740, 752–53 (11th Cir. 2010); Faust, 456 F.3d at 1347–48; United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005). These decisions have not been overruled by an en banc decision of this Court or the Supreme Court of the United States and we are not free to disregard them. See United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009) ("We may disregard the holding of a prior opinion only where that holding is overruled by the Court sitting en banc or by the Supreme Court. To constitute an 'overruling' for the purposes of this prior panel precedent rule, the Supreme Court decision must be clearly on point." (citation and quotations omitted)). The district court did not err in considering conduct for which Crews was acquitted in determining his sentence.

B.

Crews contends that the district court erroneously applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Crews raises two

---

[4] Crews does not assert that the government failed to satisfy its burden of proof or that the sentence imposed exceeds the sentence authorized by the jury's verdict.

14

arguments. First, he argues that the government's objection was untimely. Second, Crews claims that the enhancement was unwarranted on the facts of this case because it improperly punishes him for exercising his right to an examination when there were bona fide concerns about his competency.

We review a district court's decision to consider untimely objections to the PSR for abuse of discretion. See United States v. Edouard, 485 F.3d 1324, 1351 (11th Cir. 2007). We review a district court's factual findings for clear error and the application of an obstruction of justice enhancement based on those facts de novo. United States v. Bradberry, 466 F.3d 1249, 1253 (11th Cir. 2006).

The district court did not abuse its discretion in entertaining the government's untimely objection to the PSR's failure to include an obstruction of justice enhancement. The district court acknowledged that the objection was untimely and repeatedly offered to continue the sentencing hearing to afford Crews an opportunity to prepare to address this issue. Yet counsel for Crews declined each of these offers, explaining that she was prepared to go ahead with sentencing, and argued the point at length. On appeal, Crews does not claim that he suffered any prejudice as a result of the untimely objection. On this record, we decline to find the district court's decision to entertain the government's objection an abuse of discretion.

15

Nor did the district court err by applying a two-level enhancement for obstruction of justice. Section 3C1.1 of the sentencing guidelines provides for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," and "the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. The enhancement "is not intended to punish a defendant for the exercise of a constitutional right." Id. cmt. n.2.

When a bona fide doubt exists as to the defendant's competence to stand trial, the defendant has a constitutional right to seek a competency hearing. Zapata v. Estelle, 588 F.2d 1017, 1020 (5th Cir. 1979).[5] We have explained, however, that a defendant "'surely does not have the right to create a doubt as to his competency or to increase the chances that he will be found incompetent by feigning mental illness.'" United States v. Patti, 337 F.3d 1317, 1325 (11th Cir. 2003) (quoting United States v. Greer, 158 F.3d 228, 237–38 (5th Cir. 1998)). Therefore, we have found the enhancement appropriate where a defendant's feigned mental illness forced his trial to be postponed and caused the government to waste resources on a

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) ( en banc ), we adopted as binding precedent the decisions of the former Fifth Circuit rendered before the close of business on September 30, 1981.

competency examination, explaining that enhancing a defendant's sentence in these circumstances would not chill a defendant's right to a competency hearing. Id.

Here, the district court found that Crews feigned incompetency in an effort to "game the system" and prevent his prosecution. This, the district court noted, caused several continuances, thereby delaying his prosecution. It also resulted in a waste of resources in that it caused Dr. Taylor to undertake a second analysis and to submit an amended report to the court. Although we acknowledge that there may have been legitimate concerns as to Crews's competency, his decision to feign incompetence in what his own words demonstrate was an effort to obstruct or impede his prosecution supports an obstruction enhancement under § 3C1.1. The district court properly enhanced his sentence.

## C.

Finally, Crews challenges the district court's two-level enhancement for possession of a firearm under § 2D1.1(b)(1). "We review the district court's findings of fact [for a firearm enhancement] under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts de novo." United States v. Gallo, 195 F.3d 1278, 1280 (11th Cir.1999). Application Note 3 to § 2D1.1(b)(1) explains: "The enhancement for weapon possession reflects the

17

increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3. "Once the government shows that a firearm was present, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006) (quotation omitted).

In this case, the district court found that the gun was discovered in the backyard of the apartment where Crews engaged in the hand-to-hand sale of crack cocaine, that it was located in close proximity to the substantial quantity of drugs secreted in the car outside, and that a matching holster was found in Crews's kitchen. In view of these findings, which were plainly supported by the record, the district court's determination that it "was not clearly improbable" that the weapon was connected with the offense was not clearly erroneous. The district court therefore correctly enhanced Crews's sentence under § 2D1.1(b)(1).

AFFIRMED.